## UNITED STATES v. CAMERON. *
### No. 10710.

Circuit Court of Appeals, Eighth Circuit.

Dec. 30, 1936.

Keith L. Seegmiller, Atty., Department of Justice, of Washington, D. C. (Maurice M. Milligan, U. S. Atty., of Kansas City, Mo., Julius C. Martin, Director, Bureau of War Risk Litigation, of Washington, D. C., and Wilbur C. Pickett and Randolph C. Shaw, Sp. Assts. to Atty. Gen., on the brief), for the United States.

*Rehearing denied Feb. 12, 1937.

Before GARDNER, WOODROUGH, and THOMAS, Circuit Judges.

WOODROUGH, Circuit Judge.

The appeal of the government presents the question whether there was substantial evidence to sustain the verdict returned by the jury finding that Winston Arthur Cameron was totally and permanently disabled on or prior to May 11, 1920, within the meaning of his war risk insurance.

Cameron is a veteran of the World War, and the insurance was issued to him in the amount of $10,000 while he was in the service as a second class seaman. On the trial of this suit to recover the insurance, the trial court instructed the jury that the insurance had been kept in force because of uncollected compensation until May 11, 1920, and for the purposes of the appeal that date is established and accepted by the government. The question now before us was saved by exception taken to the overruling of the government's motion for directed verdict made at the close of all the evidence.

It appears from the testimony that Cameron was farming with his father on a farm in Fulton county, Ark., and was about sixteen years old at the time he enlisted in the Navy, on October 6, 1917; and that he served until April 9, 1918, when he was honorably discharged. For several months of the service period he was hospitalized for measles and pneumonia. After his discharge he remained at home with his parents for about a year and then attended high school during the fall of 1919 up to about January 1, 1920.

Some time in 1919 he was examined by two physicians near his home, and each of them found him to be afflicted with active pulmonary tuberculosis. No record of their findings was preserved, but they identified his disease by continued observation and examination and advised change of climate and the course of rest, care, and diet usually prescribed in cases of tuberculosis. The record of a medical examination made of the insured in May, 1920, was produced from the files of the Veterans' Administration disclosing a diagnosis of active pulmonary tuberculosis ex-

isting on that date. Sanitarium care was recommended.

In June, 1920, the insured was admitted to the Missouri State Sanatorium at Mt. Vernon, where a record of his symptoms and condition was made and preserved. The superintendent of the sanatorium produced the records and testified that the examination report and the symptoms recorded were "typical of an early tuberculosis." He stated that the physical findings revealed that only a small area in the upper third of the left lung was involved and that the findings were typical of "what might be called an incipient case." The notation on the sanatorium case history was: "Condition on admission Incipient." "Condition on Discharge Improved." "Wt. (weight) on admiss. (admission) 154½." "Wt. (weight) on disch. (discharge) 166½." During the time the insured was in the sanatorium he suffered a severe hemorrhage. On the 24th of June, 1920, while the veteran was in the sanatorium, he was awarded compensation at the rate of $8 per month from the 10th day of April, 1918, to May 10, 1920, and in the amount of $80 per month from and after May 11, 1920.

After leaving the sanatorium the insured remained a few months at the home of his parents and then went to California, where he stayed approximately six years. He returned and married a lady then living in Salem, Ark. Thereafter he was in California in 1928, 1929, and 1930, and at the time his suit was brought in December, 1930, he was living in West Plains, Howell county, Mo. At the time of the trial in October, 1935, he was living in Salem, Ark.

While in California the insured was frequently examined at the direction of the Veterans' Bureau, and fifteen of the medical reports made between 1921 and December, 1929, were offered in evidence by the plaintiff and are included in the record. They show that the chronic pulmonary tuberculosis was always found to be present in every examination. There is only one report, namely, the report of April 2, 1923, made by a roentgenologist in which the conclusion is reached that the tubercular condition was "arrested"; but a laboratory report made at the same time showed that tubercular bacilli were then present in the sputum.

After his short period of hospitalization at the Missouri State Sanatorium, the insured has never been in a hospital. He testified that he had been offered hospitalization by the government but had refused it. The medical reports all reflect that throughout the ten-year period which they cover the general appearance of the insured remained good. In the last report covering an examination at Los Angeles on December 20, 1929, the description is: "Claimant is a heavy-set, well developed and well nourished young man of good general appearance. Station, gait, muscular development, bones, joints and spine: Normal. Skin and mucous membrane clear. Color good."

Plaintiff's own testimony and his work record in evidence reflect that after he went to California in the latter part of 1920 he spent a considerable part of his time in continuous and gainful employment. Although it does not appear what work, if any, he did during the year 1921 in California, the report of a medical examination made in September of that year at Paso Robles states that he "has done very well here, gaining thirty pounds in past nine months." On March 5, 1923, he was employed by the Shell Oil Company of California as an oil station operator at Paso Robles, and in his application for the position he stated that he had been employed as a clerk, a mechanic, and on a farm during 1922, and he gave the names of his several employers as references. He held the position with the Shell Company until December 29, 1924, his monthly wage having been increased from $120 to $140 per month. During 1925 he was employed by the Associated Oil Company at Paso Robles and the pay-roll record shows two payments per month made to him from February through October at $145 to $160 per month. He "thinks" that he worked for a Mr. Hughes at Paso Robles for about six months on a 5 per cent. commission as an automobile salesman and made $45 the first month, $80 the next month, and the last month $240. He also had other periods of employment of shorter duration. As late as 1929 he was employed for about three months by an automobile agency at West Plains as one of its four salesmen. His services were pronounced satisfactory by his employer "and his earnings were probably about equal to the average of them."

In Eggen v. United States, 58 F.(2d) 616, this court gave careful consideration

to the problem presented in many war risk insurance cases in which there was proof that active tuberculosis existed at or before the lapse date of the insurance contract, and in line with other courts it has recognized as a fact that tuberculosis, in early or incipient stages, is usually not an incurable malady. It is one that, in a large proportion of cases, may become arrested so that the patient may engage continuously in some substantially gainful occupation. Therefore, a finding of total and permanent disability sufficient to mature the war risk insurance contract cannot be sustained on proving merely that the disease was present in an incipient or early stage. Our conclusion was adhered to by this court in Grate v. United States, 72 F. (2d) 1. See, also, Falbo v. United States (C.C.A.9) 64 F.(2d) 948, affirmed 291 U.S. 646, 54 S.Ct. 456, 78 L.Ed. 1042; Mason v. United States (C.C.A.2) 63 F.(2d) 791; United States v. Murray (C.C.A.3) 81 F. (2d) 743; United States v. Stack (C.C.A. 4) 62 F.(2d) 1056; United States v. Walker (C.C.A.5) 77 F.(2d) 415, certiorari denied 296 U.S. 612, 56 S.Ct. 132, 80 L.Ed. 434; United States v. Reeves (C.C.A.6) 75 F.(2d) 368; United States v. Linkhart (C.C.A.7) 64 F.(2d) 747; United States v. Frost (C.C.A.9) 82 F.(2d) 152; United States v. Rentfrow (C.C.A.10) 60 F.(2d) 488.

It is contended a different result should be reached in this case because of medical and lay testimony that in 1919 and prior to the lapse date this insured was not only suffering from the active tuberculosis referred to, but also from other ailments closely associated with it. In this regard, his doctor, Dr. Sparks, testified that upon an examination made in 1919 he found "an asthmatic condition, condition where there is too much residual oil in the lungs for him to use up. That is why he don't want to stay in a wet climate." "The effect of the asthmatic condition upon one suffering with tuberculosis is that it may delay the rest, retard the rest."

Dr. Thornberg testified that he had made a series of examinations in May or June of 1919. That "a diagnosis of tuberculosis of the lungs is sometimes difficult, especially in the earlier stages, and I did not come to a definite conclusion at the first examination." After his series of examinations he found bronchial asthma and a slight myocarditis of the heart muscle, which were closely associated with the pulmonary tuberculosis. He advised the patient to go out to California and to get plenty of rest and fresh air and gave him a guarded opinion as to whether the conditions found were curable or incurable. He meant that even if the tuberculosis had become in an arrested stage, "that is, the cavity formations had been healed and scars left in the lungs there was still—he was below normal and in danger of breaking down at any time under any heavy effort or strain."

But neither physician said that the presence of the other ailments, considered with their other findings, showed that the insured's tuberculosis had passed beyond the early or incipient stage, and neither of them said that he despaired of arresting the tuberculosis on account of these associated conditions. There is no ground to, infer that if the tuberculosis could be arrested the other ailments would be either totally or permanently disabling.

■ The medical testimony, considered together with the testimony of the insured himself and the lay witnesses who testified in 1935 about the symptoms and incidents prior to 1920 and concerning the history through the following years, present a case substantially similar to and ruled against the insured by the decisions of this court above cited. It may occur that tuberculosis, even in an early stage, will be associated with other ailments of such grave character that reasonable expectation of future ability to work is precluded, but the testimony here does not present such a case.

Reversed and remanded.