## MOORE v. UNITED STATES.

### No. 3070.

District Court, M. D. Pennsylvania.

July 8, 1937.

922

Leo W. White and Kenneth J. English, both of Pittston, Pa., and Ralph L. Levy, of Scranton, Pa., for plaintiff.

Joseph H. San, of New York City, G. M. Fay, of Washington, D. C., and Frederick V. Follmer, U. S. Atty., of Scranton, Pa., for the United States.

WATSON, District Judge.

This is an action on a war risk insurance policy issued to Jacob F. Moore, deceased husband of the plaintiff. Action was instituted ·by the insured, who died January 23, 1934. Thereafter, his widow, Anna Lucille Moore, was substituted as plaintiff. The trial resulted in a verdict for the plaintiff, in which the jury fixed the date of the insured's total and permanent disability from May ·19, 1919, the day the insured was discharged from the army. The case is now before the court on the government's motion for a new trial and for judgment notwithstanding the verdict.

The facts were not substantially in dispute. The insured enlisted in the army July 26, 1917, and was honorably discharged May 19, 1919. On January 11, 1918, a war risk insurance policy in the amount of $10,000 was issued to him, and he paid the premiums thereon to include the month of May, 1919, and paid no premiums thereafter. By a retroactive compensation award the policy was continued in force through the month of February, 1921.

When the insured enlisted in the army, he was about twenty-five years of age, in good health, and employed by the Firestone Tire & Rubber Company, Akron, Ohio, as a foreman in the tread cutting room. His army service took him to France, where he was engaged in active military service. On August 20, 1918, while engaged in battle, he was slightly gassed and on September 14, 1918, while engaged in battle, he was severely gassed, and was evacuated to a hospital. From that time until his discharge from the army, he was continuously confined to hospitals in France and in the United States. His illness during this period was variously diagnosed from time to time as influenza, exhaustion, chlorine gas inhalement, pleurisy and pneumonia, bronchial bilateral, and chronic bronchitis. The insured was hospitalized until his discharge from the army, May 19, 1919.

Upon discharge the insured went to Easton, Pa., where he attempted to walk in·a parade, but was unable to do so due to weakness, and had to be assisted home. He consulted a doctor a few times in Easton. He coughed and expectorated considerably, his weight was down, he was weak, suffered night sweats, and experienced difficulty in breathing. This condition, he stated, had existed from the time he was in France.

On June 1, 1919, the insured returned to his employment as foreman in the tread cutting department of the Firestone Tire & Rubber Company, Akron, Ohio, at a salary of $145 per month. From June 3, 1919, to April, 1920, when he left Akron, he was treated from time to time by a physician in Akron for his respiratory condition, chest, and throat. His work as foreman did not require much physical exertion, and assistants in the plant helped him with it. However, he lost considerable time due to illness, and, in December, 1919, he lost his position as foreman, became a tire builder, and was paid $1.10 to $1.15 per hour. He worked as a tire builder until April, 1920, losing a great deal of time due to illness, and earning about $60 per month. In April, 1920, he quit his job as tire builder, and returned to Easton, Pa. In December, 1920, he secured a position as assistant manager in a department store

in Easton at a salary of $40 per week. He lost two to three days per week at this job due to illness, and was discharged in April, 1921.

On May 19, 1921, he was inducted into vocational training by the government and was variously placed as a student at Bethlehem High School, Drexel Institute, Philadelphia School of Auto Electrical Engineering, Bodee's School of Mechanical Dentistry, Philadelphia, and at Temple University. This vocational training lasted until October, 1922, when he was removed by the Veterans' Bureau to the Naval Hospital at Philadelphia, where he was found to be suffering from chronic pulmonary tuberculosis. He was then removed to Veterans' Hospital No. 60 at Oteen, N. C., where he remained until July 24, 1923. That he was totally and permanently disabled from October, 1922, is not disputed. He never followed any occupation from that time until his death in January, 1934. The cause of death was bilateral pulmonary tuberculosis, with cavitation and tuberculosis of the larynx. During his vocational training, he received treatment and medicine at least once a week for throat and lung trouble, the seat of his trouble being in his lungs and throat, progressive loss of weight, night sweats, coughing, expectoration, and suffocation.

The testimony shows that the insured was examined by government doctors from time to time beginning September 22, 1920, when he first applied for compensation. On that date his condition was diagnosed as chronic bronchitis, and the doctor expressed the opinion that the insured was suffering under a major occupational handicap. Four subsequent examinations did not reveal any tuberculosis condition, but, on November 7, 1921, Dr. Maurice Kemp, a government doctor, diagnosed the case as tuberculosis, chronic pulmonary, quiescent. Subsequent examinations also revealed tuberculosis, and, in October, 1922, he was sent to the Veterans' Hospital at Oteen, N. C., as a tubercular.

On May 22, 1923, the insured married the present plaintiff while at the hospital, and left the hospital against medical advice, being discharged on July 24, 1923. Examinations made thereafter by government physicians revealed active tuberculosis. After discharge from the hospital, the insured and the plaintiff lived in Asheville, N. C., for a short time, and, in the fall of 1923, moved to Easton, Pa., where a child was born, and then to Blakeslee in the Pocono Mountains, Pa., where they resided until the insured's death. The plaintiff, the insured's wife, had nurse's training, and cared for her husband, administering essentially the same medical treatment as he would receive at a hospital. From time to time government doctors recommended that the insured be hospitalized, but the insured never accepted hospitalization from the time of his marriage until shortly before his death.

Two medical experts of unquestioned training and experience in the field of tuberculosis, Drs. Wheelock and Clark, after examining all medical records, and in answer to an hypothetical question, testified on behalf of the plaintiff that, in their opinions, the insured, was suffering from active tuberculosis from 1918 until his death, and that he should have been given rest treatment from that time until his death. Dr. Wheelock stated that it sometimes took a long time to discover tuberculosis such as the insured had, and that it was not unusual for doctors to fail to discover tuberculosis, using all the proper equipment and methods available. After examining all the medical records of the insured, Dr. Clark described the case as a "rather typical picture of progressive tuberculosis."

Under cross-examination, Dr. Wheelock and Dr. Clark testified that if the insured had been hospitalized from the time of his discharge for a period of from two to three years, his condition might have become arrested and that, when tuberculosis is arrested, a man can very often return to his occupation under observation. Dr. Clark testified that the chance of arrest of the disease becomes less as the period of activity increases.

The government's motion to direct judgment in its favor cannot be considered for the reason that it is not properly before the court. Under the Conformity Act, 28 U.S.C.A. § 724, federal courts follow the state practice wherever consistent with federal Law. The Supreme Court has held that federal courts sitting in Pennsylvania are governed by the Pennsylvania Act of 1905, P.L. 286, as amended (12 P.S.Pa. § 681), in so far as motions for judgment are concerned. Aetna Ins. Co. v. John M. Kennedy, 3d, 57 S.Ct. 809, 81 L.Ed. ——, opinion filed May 17, 1937. It is the established rule in Pennsylvania that a motion for judgment notwithstanding

924

the verdict under the act of 1905 must be preceded by the presentation to the court at the trial of a written point for binding instructions. Reichner v. Reichner, 237 Pa. 540, 85 A. 877. In the present case, no written point for binding instructions was presented at the trial and, therefore, defendant's motion for judgment must be denied.

 In support of its motion for a new trial, the defendant contends that there was no evidence from which the jury could find that the insured was totally and permanently disabled on May 19, 1919.

Viewed in the light most favorable to the plaintiff, the evidence shows that the insured was suffering from pulmonary tuberculosis in its incipient stage. The plaintiff's own medical experts testified that, if the insured had been given proper treatment for a period of two to three years, his condition might have been arrested, and he might have returned to his occupation under supervision. There is not a substantial medical fact in the record from which it could be found that on May 19, 1919, there was a reasonable probability that, because of his disease, the insured would never again be able to follow a substantially gainful occupation. The evidence left the question of the permanency of the disease to speculation and conjecture. Whether a disease renders a person permanently disabled is a medical question, and, without positive testimony by medical experts, the conclusion of laymen upon such an issue is without adequate basis. U. S. v. Clapp (C.C.A.) 63 F.(2d) 793; U. S. v. Wilfore (C.C.A.) 66 F.(2d) 255. It is now well settled that the court must take judicial notice of the fact that tuberculosis in its incipient or early stage is curable and the proof of its existence is not sufficient to establish total and permanent disability. U. S. v. Walker (C.C.A.) 77 F.(2d) 415; U. S. v. Cameron (C.C.A.) 87 F.(2d) 61. The entire record discloses a condition of health on May 19, 1919, which may or may not have been cured. I am forced to the conclusion that there was no substantial evidence, no evidence at all, to support the verdict. Therefore, a new trial should be ordered.

Now, the defendant's motion to direct judgment in favor of the defendant is dismissed, the defendant's motion for a new trial is sustained, and a new trial is ordered.