### UNITED STATES v. THORNBURGH.
### No. 11589.

Circuit Court of Appeals, Eighth Circuit.

May 2, 1940.

Fendall Marbury, Sp. Atty., Department of Justice, of Washington, D. C., (Maurice M. Milligan, U. S. Atty., of Kansas City, Mo., Julius C. Martin, Director, Bureau of War Risk Litigation, of Washington, D. C., Wilbur C. Pickett, Sp. Asst. to Atty. Gen., and Kenneth E. Spencer, of Washington, D. C., Atty., Department of Justice, on the brief), for appellant.

Lawrence E. Goldman, of Kansas City, Mo. (Frank R. Daley, of Kansas City, Mo., on the brief), for appellee.

Before SANBORN, THOMAS, and VAN VALKENBURGH, Circuit Judges.

SANBORN, Circuit Judge.

This appeal is from a judgment for the plaintiff (appellee) in a suit upon a policy of war risk insurance issued to Winston Arthur Cameron. The insured commenced the suit in November, 1930. It was based upon a claim that he had become totally and permanently disabled before his policy lapsed. This the Government denied. A trial resulted in a verdict and judgment for the insured, which, on appeal, this Court reversed upon the ground that the evidence was insufficient to support the verdict. United States v. Cameron, 8 Cir., 87 F.2d 61, certiorari denied, 300 U.S. 688, 57 S.Ct. 790, 81 L.Ed. 1345. The insured died January 21, 1939. Dr. Thornburgh was appointed administrator of the insured's estate and was substituted as plaintiff. A second trial resulted in a verdict and judgment for the plaintiff. The Government again challenges the sufficiency of the evidence of total and permanent disability prior to the lapse of insured's policy. The evidence adduced at both trials, except some of the medical evidence, was substantially the same. The history of the insured is stated in our former opinion and need not be repeated in detail.

The insured enlisted in the Navy October 6, 1917, at the age of 16 years. He served until April 9, 1918, when he was discharged on account of his age. He paid no premiums after his discharge, but it is stipulated that uncollected compensation

kept his policy in force until June 24, 1920.[1] While in the service he was hospitalized for measles and pneumonia from January, 1918, until his discharge. He then returned to his home near Moody, Missouri. At that time he was in poor physical condition, had a cough, night sweats, shortness of breath and ear trouble. In the spring of 1919 he consulted Dr. Sparks and Dr. Thornburgh, of West Plains, Missouri, who examined, treated and advised him. They discovered that he had active pulmonary tuberculosis with complications. They advised removal to a drier climate, rest, no work, diet, sunshine and fresh air. The insured went to California in the fall of 1920, after having spent a short time at a State sanatorium in Mount Vernon, Missouri, at which he did not receive proper treatment, and where he had a severe hemorrhage. After leaving the sanatorium, the insured intermittently engaged in activities and occupations which militated against his chances of recovery. He did not follow the advice of Dr. Thornburgh with respect to care and treatment.

At the first trial, Dr. Sparks' testimony was, in substance, that the insured in 1919 had active pulmonary tuberculosis with asthma incidental to it, and that his (the Doctor's) prognosis was unfavorable. The Doctor did not testify upon the second trial, but his former evidence was read.

Dr. Thornburgh's testimony at the *first trial* was to the effect that in 1919 and 1920 the insured had active pulmonary tuberculosis accompanied with bronchial asthma, a *slight myocarditis, and inflammation of both ears*; that he treated and observed the insured until the spring or summer of 1920; that he did not regard him as able to engage in manual labor or in any occupation requiring him to be indoors; that the Doctor gave to the insured a guarded opinion as to whether his condition was curable or not; that the insured's chances of recovery would depend entirely on the care he took of himself and whether he followed the Doctor's advice (to stay out in the open, without any heavy exercise, to diet, and to get fresh air and sunshine, rest and sleep).

This Court, after reviewing the evidence given upon the first trial, held, in effect, that the testimony of these two doctors did not constitute substantial evidence of the existence of pathological conditions existing prior to June 24, 1920, which then made it reasonably certain that the insured's disability had become permanent. On the second trial the plaintiff undertook to show that by June 24, 1920, the insured's pulmonary tuberculosis had reached a moderately advanced or advanced stage with cavitation and that his chances for recovery, regardless of the treatment he received, were negligible.

Dr. Thornburgh testified upon the *second trial* that his physical examinations of the insured made in 1919, of which he had no record, disclosed that the insured had a case of moderately advanced pulmonary tuberculosis with two small cavities; that it was of a severe type, and that it was his (the Doctor's) opinion that it would continue as long as the insured lived; that the insured's youth and his associated afflictions militated against his chances of recovery. On cross-examination the Doctor stated that he was testifying purely from memory; that he had had no X-rays taken of the insured's chest at the time he examined him, and that he could be mistaken as to the extent of the tubercular involvement of the lungs. He testified that proper treatment for the insured was rest in bed, proper diet, plenty of air and sunshine, and no work, and that he so advised the insured; that whether the insured could recover largely depended on following the Doctor's advice; that a large percentage of moderately advanced cases of tuberculosis do become arrested; that he could not say that the insured would not have recovered if he had followed the advice which was given him, but that in his (the Doctor's) opinion, the insured's chances for recovery were lessened because of his age and the character of involvement that the Doctor recalled having found. He also testified that, while ordinarily a person with a moderately advanced case of tuberculosis does not live for more than seven years unless the disease becomes arrested, there is no definite rule as to that.

Dr. Camp testified as an expert for the plaintiff. He had no first-hand information about the insured, but based his opinion solely upon the testimony given by Dr. Thornburgh as to what he discovered from his examinations of the insured in 1919. Dr. Camp expressed the opinion that the

---

[1] At the first trial it seems to have been assumed that May 11, 1920, was the date of lapse.

insured had an advanced case of pulmonary tuberculosis with cavitation, and that only a small percentage of such cases, when complicated with asthma and a cardiac condition, reached the stage of arrest. His opinion was that the insured's condition in 1919 was such that he would not recover from the disease.

The testimony adduced by the Government on both trials tended to show that what the insured had in 1919 and 1920 was pulmonary tuberculosis in an early stage, which remained active and progressive until it eventually, nearly 20 years later, caused the insured's death.

If Dr. Camp's opinion, based upon Dr. Thornburgh's recollection of conditions disclosed by his examinations of the insured in 1919 and 1920, is to be regarded as substantial evidence that the insured prior to June 24, 1920, had a virtually incurable advanced case of tuberculosis with cavitation, the judgment should be affirmed.

■ A reviewing court, however, is not always required to accept as substantial evidence the opinions of experts. "Where it clearly appears that an expert's opinion is opposed to physical facts or to common knowledge or to the dictates of common sense or is pure speculation, such an opinion will not be regarded as substantial evidence." Svenson v. Mutual Life Ins. Co. of New York, 8 Cir., 87 F.2d 441, 445. See also United States v. Hill, 8 Cir., 62 F.2d 1022, 1025; United States v. Doublehead, 10 Cir., 70 F.2d 91, 92.

We regard Dr. Camp's opinion as to the insured's condition in 1919 as without a sufficient factual basis in the evidence and as largely speculative. Dr. Thornburgh was not sure that he had accurately, through his physical examination without X-ray, determined the extent of the tubercular involvement of the insured's lungs, and he placed the insured in a class of tuberculars who have a reasonable chance for recovery. The fact that the insured, who was not shown to have had tuberculosis prior to 1918, lived for approximately 20 years after the examinations about which Dr. Thornburgh testified were made, without proper care or treatment, and engaged during that period in normal activities which seriously lessened, if they did not completely destroy, any possibility of recovery, casts serious doubt upon the accuracy of the findings of Dr. Thornburgh

and the reliability of the opinions expressed by him and Dr. Camp as to the extent to which the disease had progressed by June 24, 1920, and the insured's chances of recovery. We think that their testimony was not an adequate basis for concluding that the insured's case was incurable prior to June 24, 1920.

In United States v. Rentfrow, 60 F.2d 488, 489, Judge McDermott, speaking for the Circuit Court of Appeals of the Tenth Circuit, said: "Such cases as these, which are as frequent as they are unfortunate, make a strong appeal to the sympathies. An incipient tubercular stands at a crossroads: If he continues his ordinary activities, his condition is a hopeless one. On the other hand, if he will follow a program of complete rest and wholesome nourishment for an indicated period, the chances are strongly in favor of an arrested condition and a substantial cure."

In Theberge v. United States, 87 F.2d 697, 699, Judge Learned Hand, speaking for the Circuit Court of Appeals of the Second Circuit, said: "But quite aside from this, a verdict should have been directed for another reason. Syphilis is indeed not always a curable disease, but the evidence was all to the effect that if the well-known treatment is followed, it often is, and the insured although advised that he should undergo it, refused to do so. That was a bar to his recovery. Eggen v. United States, 58 F.(2d) 616, 620 (C.C.A. 8); United States v. Clapp, 63 F.(2d) 793, 795 (C.C.A.2). The reason is apparent. He must show that at the lapse he is permanently disabled, and this must always remain uncertain when treatments were available to him which had reasonable hope of success. Lumbra v. United States, 290 U.S. 551, 560, 54 S.Ct. 272, 276, 78 L. Ed. 492. If the disease is one which is often curable, nobody can say that it would not have been cured."

In United States v. Hammond, 5 Cir., 87 F.2d 226, 227, the Court said: "So, with tuberculosis of the chronic type only moderately advanced, there is a good hope under proper treatment of an arrest and a return of the patient to usefulness. Not until treatment has been tried and is found unavailing can it be said that a reasonable certainty of permanence appears."

In United States v. Brewer, 5 Cir., 97 F.2d 899, the evidence indicated that the insured had active pulmonary tuberculosis

at the time his policy lapsed, but failed to take treatment. The court, in an opinion by Judge Sibley, held the evidence of total and permanent disability insufficient, and said (page 900 of 97 F.2d): "If the true cause of the disability be unknown or wrongly diagnosed, subsequent developments which reveal its original though unsuspected malignancy would show original permanency; but where the cause is known, and known to be frequently curable, permanency does not exist until reasonable effort to cure fails."

The opinion of Judge Parker in United States v. Marsh, 4 Cir., 107 F.2d 173, 174, contains the following: "It is not enough that an ailment which is frequently curable eventually turns out badly and is not cured. When the cause of the trouble is known, and is known to be frequently curable, permanency cannot be said to exist until reasonable effort to cure fails. United States v. Brewer, 5 Cir., 97 F.2d 899. It must appear that at the time of lapse insured was permanently disabled; and this must necessarily be uncertain where treatments were available to him which in the light of all the circumstances had reasonable hope of success. Theberge v. United States, 2 Cir., 87 F.2d 697. Failure to take treatment may destroy whatever probative value death or permanency of disability occurring after lapse would otherwise have. Eggen v. United States, 8 Cir., 58 F.2d 616."

Our conclusion is that the verdict of the jury in this case, which was, in effect, a finding that the insured prior to June 24, 1920, had active pulmonary tuberculosis which was not susceptible of arrest under proper treatment, is not sustained by substantial evidence, but is based upon speculation and conjecture.

The judgment is reversed.