Lloyd G. SEBBY, Plaintiff,

v.

Arthur S. FLEMMING, Secretary of Health, Education and Welfare, Defendant.

Civ. A. No. 732.

United States District Court
W. D. Arkansas,
Texarkana Division.

May 7, 1960.

Raffaelli & Keeney, William A. Barber, Jr., Texarkana, Tex., for plaintiff.

Charles W. Atkinson, U. S. Atty., Robert E. Johnson, Asst. U. S. Atty., Ft. Smith, Ark., for defendant.

JOHN E. MILLER, Chief Judge.

This is an action by the plaintiff, Lloyd G. Sebby, to review a final decision of the Secretary of Health, Education and Welfare denying his claim for a period of disability and disability benefits as provided by the Social Security Act, as amended, 42 U.S.C.A. § 301 et seq. The plaintiff filed his original request for benefits on September 3, 1957. In due course his claim was administratively denied, and at the plaintiff's request a hearing was held on July 30, 1958, before a Referee. The Referee filed his opinion on September 26, 1958, denying the plaintiff's claim, and in due time this opinion became the final decision of the defendant. It is this decision the court is now called upon to review under the provisions of 42 U.S.C.A. § 405(g).

The plaintiff filed a motion for summary judgment on March 23, 1960. The defendant likewise filed a motion for summary judgment on April 19, 1960. Briefs have been received from each side and considered by the court, and the case is now ready for disposition.

The basic facts are not in dispute. Plaintiff was born on a farm in Illinois on November 25, 1900. He attended high school through the 10th grade and lived and worked on the farm until 1935. He then worked for the Firestone Tire and Rubber Company for about a year as recapper. In 1936 he accepted a position with a livestock commission company as a yard man, and later became a cattle salesman. Sebby followed his occuption the rest of his active life, working primarily in the stockyards at Omaha, Nebraska, and Sioux City, Iowa.

The plaintiff applied for a Social Security account in 1936 and came under coverage in 1937. He worked constantly thereafter for 69 consecutive quarters until March 1954. At that time the plaintiff was suffering from tachycardia and nervousness, so he quit his job and

moved to a small farm in Minnesota. Sebby returned to the cattle buying business on a part-time basis about a year later, and continued this activity until December 1955 when he suffered a severe heart attack. Since that time he has not actively worked.

It is undisputed that plaintiff meets the earning requirements of the Act through the quarter ending September 30, 1956. His disability must be determined, therefore, as of that date and of the date of his application.

At the present time the plaintiff resides with his wife and daughter on a 55-acre farm near Gillham, Arkansas. Some attempt has been made to raise chickens on the farm but apparently without success. The plaintiff's wife does most of the work involved in the chicken business. A few head of cattle are also allowed to graze on the farm. The plaintiff attempts to do routine household tasks, such as mowing the lawn, but is forced to quit after a short time. He has attacks on the average of one per week with each attack lasting about three hours. The plaintiff describes his attacks as having the sensation of his heart "jumping out of its socket." He experiences a shortness of breath, perspires profusely, and in the more severe attacks loses consciousness. He was hospitalized in July 1957 following one of his more severe attacks.

The plaintiff was referred to the Arkansas State Vocational Rehabilitation Agency for possible rehabilitation training. On September 23, 1957, the plaintiff's application was denied due to his age.

Statements from various friends and neighbors were introduced into evidence and describe his heart condition. The persons making the statements all agreed that the plaintiff is not physically able to work. The Board of Education of the Gillham, Arkansas, public schools considered hiring the plaintiff as a custodian, but did not do so due to his heart condition.

Medical reports from two doctors were introduced by the plaintiff. Dr. Pat Cmeyla of Sioux City, Iowa, treated the plaintiff at various times between 1947 and 1957. According to Dr. Cmeyla's report dated September 6, 1957, the plaintiff is suffering from paroxysmal tachycardia, and as a result became unable to work in 1955. He classifies the plaintiff's functional capacity as class 3 (marked limitation). Dr. Cmeyla notes that the attacks are increasing in frequency and in severity, and that it is not known when optimum improvement can be expected. He finally states that because of the nature of the plaintiff's difficulty, he is totally incapacitated.

Dr. R. B. Dickinson of DeQueen, Arkansas, first examined the plaintiff in July 1957. According to his report of September 4, 1957, the plaintiff is suffering from paroxysmal tachycardia and that any improvement was indefinite. The report states that the plaintiff is confined to his house at frequent intervals, and that he has advised him not to work. Dr. Dickinson classifies the plaintiff's functional capacity as class 3 (marked limitation), and states that the plaintiff became unable to work in December 1955. He states that in his opinion the plaintiff is totally disabled.

In a subsequent letter report, dated November 22, 1957, Dr. Dickinson states:

"Mr. Sebby has been under my care since July 1957. I have seen the patient frequently. He has suffered from severe episodes of Paroxysmal Tachycardia, which is uncontrolled by barbiturates, pronestyl, quinidene and strict limitation of activity.

"It is my opinion that he is in a cardiac condition such as to render him 100% unable to engage in a gainful occupation."

In his last report dated March 20, 1958, Dr. Dickinson states:

"This man has severe paroxysmal tachycardia, which gets progressively worse. Any type of exertion or exercise now precipitates an episode.

"He is totally disabled and I have advised him not to work."

The plaintiff is 5 feet 10 inches and weighs 175 pounds. He sleeps normally at night but perspires profusely. He requires two hours of bed rest during the day and takes three kinds of medicine.

The Social Security Administration referred the plaintiff to Dr. Alastair D. Hall of Little Rock, Arkansas, for a consultive examination. Dr. Hall concludes his report, dated July 28, 1958, by stating:

"Conclusions: This 58 year old man gives a history of attacks of weakness, questionable blackouts, and rapid heart action which seem to be attacks of paroxysmal Atrial Tachycardia. In between attacks he is fine but has to be careful about his activity. He is nervous and very anxious about these attacks. He would not take an ETT. The Vital Capacity was 70% of normal. The lungs were clear on X-Ray but the heart was slightly enlarged and there were some calcium plaques along the aortic arch. The EKG showed moderate changes consistent with atherosclerosis and ischemia. He may have had an old occlusion. I would place this man in Class II, possibly III, with slight limitation of activity. If he could overcome some of his fear he would probably get along much more satisfactory. I believe he should be able to do some work."

In his opinion the Referee summarizes all of the testimony referred to above, and concludes his opinion by stating:

"The Referee has given careful consideration to the entire evidence including testimony at the hearing. The evidence shows that the claimant has been suffering with attacks of Paroxysmal Tachycardia over a period of years, and also with Arteriosclerotic Heart Disease with Ischemia, Moderate and with Anxiety concerning his condition. The medical findings however do not indicate that such conditions exist at present to a severely disabling degree. There appears to be only slight limitation of functional activity, there existed no edema, orthopnea, or hemoptysis. Fundi was normal and vital capacity was 70% of normal. While the claimant may be unable to perform work requiring stress, strain, or heavy physical exertion, it does not appear that he would be precluded from engaging in many types of light or sedentary work. The consultative specialist expresses the opinion that the claimant should be able to do some work and that if he could overcome his anxiety he would get along much more satisfactorily.

"In the light of the evidence and of the foregoing considerations, the Referee finds that the claimant's impairments are not of such severity as would continuously preclude him from engaging in any substantial gainful activity from the date of the onset, December 1955, and continuing without interruption until his disability applications were filed (September 3, 1957)."

The scope of the review in this type of case is well settled. Title 42 U.S.C.A. § 405(g) provides:

"The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive * * *."

■ It is not disputed that the determination of this appeal is to be based on the record transmitted here by the Secretary, considered as a whole. Goldman v. Folsom, 3 Cir., 1957, 246 F.2d 776; Lease v. Fleming, D.C.D.Md.1959, 178 F.Supp. 169.

■ The test for disability consists' principally of two parts: (1) a determination of the extent of the physical or mental impairment, and (2) a determination whether that impairment results in an inability to engage in any substantial gainful activity. 42 U.S.C.A. §§ 416 and 423.

454

■ After reading and considering the whole of the record, the court does not find that the Referee's conclusions are supported by substantial evidence. It is obvious that the findings of the Referee are based almost exclusively on the medical report of Dr. Hall. However, the court does not find that Dr. Hall's report is sufficient to constitute substantial evidence in the light of the other medical evidence and other facts reflected in the transcript as a whole. The substantiality of evidence must take into account whatever in the record fairly detracts from its weight. Universal Camera Corp. v. N.L.R.B., 1951, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed 456.

In discussing the requirement of a review of the whole record in cases of this type, Professor Davis, in Sec. 29.03 of his recent Treatise on Administrative Law, quotes Professor Jaffe at page 127 of Volume 4 as saying:

> " 'Obviously responsible men would not exercise their judgment on only that part of the evidence that looks in one direction; the rationality or substantiality of a conclusion can only be evaluated in the light of the whole fact situation or so much of it as appears. Evidence which may be logically substantial in isolation may be deprived of much of its character or its claim to credibility when considered with other evidence.' " [Jaffe, Administrative Procedure Re-examined: The Benjamin Report, 56 Harv.L. Rev. 704, 733 (1943).]

In disposing of a World War I war risk insurance case, the Court of Appeals for the Eighth Circuit said in United States v. Thornburgh, 1940, 111 F.2d 278, certiorari denied 311 U.S. 664, 61 S.Ct. 21, 85 L.Ed. 426; at page 280 of 111 F.2d:

> "A reviewing court, however, is not always required to accept as substantial evidence the opinions of experts. 'Where it clearly appears that an expert's opinion is opposed to physical facts or to common

knowledge or to the dictates of common sense or is pure speculation, such an opinion will not be regarded as substantial evidence.' "

In the present case the plaintiff is a man who has always led a vigorous outdoor life, and who now finds himself unable to perform more than simple household tasks. He takes daily bed rest, yet still averages one attack a week. His friends and neighbors classify him as disabled. Two doctors who have treated him over a period of years advise him not to work and state that he is totally incapacitated. The only evidence in support of the Referee's findings is the medical report of Dr. Hall, based upon one examination of the plaintiff. In his report Dr. Hall recognizes the plaintiff's heart condition and classifies him functionally as either class 2 or class 3, but states that he believes the plaintiff should be able to do "some work."

■ Throughout the record the defendant and the Referee have placed great stress on the adjective "any" which precedes the phrase "substantial gainful activity." Whenever possible, the word "any" is underscored in the record. However, the word "any" must be read in the light of what is reasonably possible —not what is conceivable. The statute must be given a reasonable interpretation. It is a remedial statute and must be construed liberally. It is not the intention of Congress to impose a test so severe as that required by the Secretary and to exact as a condition precedent to the maintenance of a claim the elimination of every possibility of gainful employment. Klimaszewski v. Flemming, D.C.E.D.Pa.1959, 176 F.Supp. 927, 931 (opinion by Chief Judge John Biggs, Jr., Third Circuit, sitting by assignment).

■■ It must be remembered that the Act is concerned not with a standard man of ordinary and customary abilities, but with the particular person who may claim its benefits and the effect of the impairment upon that person, with whatever abilities he has. Dunn v. Folsom, D.C.W.D.Ark.1958, 166 F.Supp. 44.

Therefore, the background, education, training and age of the particular applicant become pertinent. It should also be noted that the word "substantial" as used in Secs. 416 and 423 does not modify "gainful," but rather modifies "activity." The activity in which the plaintiff must be able to engage must not only be "gainful" but it must also be "substantial." The determinative factor here is not how substantial the gain is, but how substantial the activity in which the plaintiff could gainfully engage. Dunn v. Folsom, supra.

The Referee attached as an appendix to his findings and decision excerpts from Senate Report No. 1987, 83rd Congress, pp. 20 and 21. It is apparent that the Referee relied on some of the language contained therein to reach the findings he did. Similar excerpts were attached to the decision of the Referee in the recent case of Adams v. Flemming, D.C.Vt.1959, 173 F.Supp. 873. There Judge Gibson said at page 878:

"The Referee seems to be primarily relying on comments entitled 'Congressional Intent on Severity of Disability' appended to his findings and decision. While it is true that certain of the quoted passages seem to sustain the Referee's conclusions, the quoted portions of Senate Report No. 1987 are not in context and are, I feel, misleading. To strictly read these comments into the statutes here pertinent without considering the entire legislative and judicial picture to date, would so restrict the application of the relief provisions as to render them meaningless."

Judge Gibson goes on to say at page 879 that the Department of Health, Education and Welfare submitted a statement setting forth its stand on the disability freeze provision to the Senate Finance Committee, in which it defined "substantial gainful activity" in the following terms:

"'Substantial gainful activity means the performance of substantial services with reasonable regularity in some competitive employment or self-employment. It relates to the range of activities the individual can perform * * * complete helplessness is not necessary to a finding of an allowable disability. Sporadic or infrequent activity would not necessarily establish ability to engage in substantial gainful activity.' "

It is obvious from a reading of the record that the Referee did not apply this type meaning to the term "substantial gainful activity" in the present case.

█ As heretofore noted, the plaintiff has experienced difficulty in securing employment due to his heart condition. This was illustrated by the refusal of the Gillham Board of Education to hire him as a school custodian. It is not surprising that the plaintiff would experience difficulty in securing even light work of this nature in view of the recent Arkansas Supreme Court decisions in which an employer is held liable under the workman's compensation laws for the injury or death of an employee with a pre-existing heart condition when the normal work load causes a collapse. No extraordinary exertion is required. See E. P. Bettendorf & Co. v. Kelly, Ark. 1958, 317 S.W.2d 708; Safeway Stores, Inc. v. Harrison, Ark.1959, 328 S.W.2d 131.

The plaintiff has sustained his burden of proof. When the record is reviewed as a whole, the decision of the Referee is not supported by substantial evidence. The plaintiff was disabled within the meaning of the Act on September 30, 1956, and this disability continued until the time of his application for benefits on September 3, 1957.

Therefore an order is being entered today granting the plaintiff's motion for summary judgment and reversing and remanding the case to the Secretary of Health, Education and Welfare with directions that plaintiff be granted a period of disability and disability benefits in accordance with the court's decision herein.