UNITED STATES of America,
Plaintiff,

v.

CERTAIN INTERESTS IN PROPERTY IN CUMBERLAND COUNTY, STATE OF NORTH CAROLINA; Fort Bragg Investment Company, a Corporation, et al., and Unknown Owners, Defendants.

Civ. No. 534.

United States District Court
E. D. North Carolina,
Fayetteville Division.

Aug. 1, 1960.

Robert R. MacLeod, Atty., Dept. of Justice, Washington, D. C., Julian T. Gaskill, U. S. Atty., Raleigh, N. C., for plaintiff.

McLendon, Brim, Holderness & Brooks, Greensboro, N. C., for defendants.

HAYES, District Judge.

The United States, hereafter referred to as Government, filed a declaration of taking, on Nov. 1, 1957, all property and property rights of defendants Bragg Investment Co., and others, hereafter referred to as Bragg, consisting of a seventy-five year lease of 516.89 acres of land located within the military reservation of Fort Bragg, North Carolina and on which Bragg erected 2,000 housing units, streets, water and sewer system and a shopping center, all adequate to accommodate approximately 6,000 population.

Pursuant to Rule 71A of the Federal Rules of Civil Procedure, 28 U.S.C.A., and Section 1594a(c)(1) of Title 42 U.S.C.A., the Court appointed a Commission of three to view the premises, take evidence and to make and report its findings. Exceptions were filed to the original report and the Court re-referred the matter to the Commission

for clarification, and in its supplemental report it adopted what it reported originally. There is ample evidence to sustain the findings and determination of of the Commission except on the sole question of the economic life of the property. The Commission fixed the period at 30 years from the taking, being treated as 35 years in the beginning, since it had been constructed approximately 5 years before the taking.

It was virtually conceded by the parties, and the Commission found, that there were no comparable sales sufficient to determine the fair market value nor was it feasible to employ the test of reproduction less depreciation. This left the capitalization of income method as a guide in determining the fair market value which the Commission followed theoretically and adopted it as the fair market value. The Commission adopted the conjecture of witness Cantwell that due, to technological discoveries, a dispersion of troops from Fort Bragg might render the property useless in thirty years. Therefore, he limited its economic life to 30 years from the taking. The Commission recognizes there would be forty years more left in the lease and the property but considers it of little value, exactly opposite the view expressed in the Fifth Circuit, United States v. Benning Housing Corporation, 276 F.2d 248, 251, in which the Court said: "The present value of the Government's rights sixty-five years hence with respect to these improvements is negligible."

The Commission, in explaining why it considers the forty years remaining life of the lease negligible, assumes the outlay for repairs would offset the income. This Court cannot approve either of these opinions. As to the limit of thirty years life, it is in complete contradiction to facts as distinguished from mere conjectures. Both the Congress and the Military saw a permanent need for additional housing facilities at the time of taking; two of the three government expert witnesses (Hastings had appraised forty-two Wherry projects for the Government and Mack thirteen) estimated the economic life at forty-five and fifty years, respectively, except Mack limited the commercial property to thirty-six years from the time of taking. Their opinions were based on physical facts and experience. Moreover, the expert witnesses for Bragg, Bradshaw, Powell, McKean and Vaughan estimated the life at 50, 40, 34 plus 20% residual of the estimated reproduction cost, and 40 respectively.

Cantwell alone expressed the opinion that in thirty years there might be a dispersal of troops from Fort Bragg, rendering the housing useless. He might have conjectured that Russia would destroy the Fort with bombs and reduced its life to 5 or 10 years. The fair market value of the property at the time of taking should be based on facts and it would be unfair to reduce its value on mere conjectures. The testimony overwhelmingly contradicts the opinion of Cantwell.

Admittedly there is a possibility, indeed, many possibilities that the property will become useless before it wears out but there is no probability that Fort Bragg or West Point will become obsolete in the foreseeable future. It was prophesied by Isaiah that when the Prince of Peace comes, "they shall beat their swords into plowshares, and their spears into pruning hooks; Nation shall not lift up sword against Nation, neither shall they learn war any more." Although nearly twenty centuries have elapsed since the coming of the Messiah, we still have swords and spears and wars and rumors of wars. Instead of resorting to Utopian dreams for determining the life of the property, the question ought to be resolved on basic facts and real probabilities.

There is no evidence to show that it was reasonably probable in the reasonably near future after the taking date that the housing would become useless by reason of dispersal of troops due to technological developments. When that remote possibility leads Cantwell to cut down the period of usefulness to thirty

years, his opinion based on such a possibility is valueless. United States v. Thornburgh, 8 Cir., 111 F.2d 278, page 280. Yet it was adopted by the Commission. If the dispersion of troops from Fort Bragg, however caused, shortens the otherwise economic life of the property, there should be a preponderance of the evidence to show it. United States v. Cooper, 5 Cir., 277 F.2d 857. The opinion of an expert witness not based on adequate factual foundation is without probative value. "Elements affecting value that depend upon events * * * which, while within the realm of possibility, are not fairly shown to be reasonably probable should be excluded from consideration for that would be to allow mere speculation and conjecture to become a guide for the ascertainment of value—a thing to be condemned in business transactions as well as judicial ascertainment of truth." Olson v. United States, 292 U.S. 246, 257, 54 S.Ct. 704, 709, 78 L.Ed. 1236.

When the Government acquired Bragg's property in 1957, Bragg had seventy years unexpired lease coupled with the right to remove any improvement placed on the land by Bragg; it is stipulated that the property had 97% occupancy with desirable tenants and full collection of rents; the care and upkeep of the premises were well above normal rental property; these improvements were not temporary barracks but permanent improvements. The dwelling units were of brick veneer.

In addition to the entire trend of the evidence as to the permanent nature of these improvements except Cantwell's fear of a dispersal of Fort Bragg in the indefinite future, common sense and observation convince us that the useful life of the lease and improvements thereon will not terminate in thirty years. In any village, town or city, are occupied residences which have been erected more than fifty years ago. Most any typical cotton mill village where the houses were cheap and made of lumber will reveal many houses still occupied which were erected fifty years ago.

The Government witness, Mack, in selecting the remaining life at fifty years for the dwelling units and thirty-six years on commercial property, testified: "I was discharged from an Army base 39 years ago and within the last six months period I have appraised a thousand housing units on this Army base; and I believe I identified the same quarters I occupied there, still there in use." It is significant that the report of the Senate Armed Services Committee, explaining the permissive legislation for the acquisition of the Wherry housing, said: "Recognizing that Wherry units would be in existence at Military installations for perhaps the next 60 to 70 years and that in many instances it would be desirable for the Military departments to purchase them, Congress enacted permissive acquisition legislation in 1955."

For the reasons above stated, this Court rejects the finding of the Commission that the economic life of the property is thirty years as being clearly erroneous, and adopts instead thirty-five years remaining economic life. United States v. Twin City Power Co., 5 Cir., 253 F.2d 197.

This case differs from Cunningham v. United States, 4 Cir., 270 F.2d 545, where the district court was reversed for not approving findings of the Commission on facts supported by evidence. The present case involves only an opinion on the probable length of economic life of the property which is not of itself a fact susceptible to proof.

■ The use of thirty-five years remaining life and the stabilized income of $1,250,000 adopted by the Commission and at a 6% return as found by it, by using the Inwood coefficient of 14.498, gives a gross value of $18,122,500, less depreciation on short-lived items found by the Commission in the sum of $219,261 and the mortgage indebtedness on Nov. 1, 1957 of $15,196,013.07, the two items making $15,415,279.37 thus leaving a net sum of $2,707,220.63 as the fair market value of the property taken.

558

This is the minimum amount of the fair net market value of the property. It is supported by the great weight of all of the evidence and is not increased or diminished by speculation.