HARDING GLASS COMPANY v. ALBERTSON.

4-7675                                                      187 S. W. 2d 961

Opinion delivered June 4, 1945.

*Daily & Woods,* for appellant.

*Heartsill Ragan,* for appellee.

HOLT, J.    The Workmen's Compensation Commission, under authority of Act No. 319 of 1939, granted appellee's claim for an award of compensation against appellants for an injury to her husband, W. C. Albertson, which later resulted in his death. She alleged that her husband on July 15, 1943, while employed as a glass cutter by appellant, glass company, suffered a heat prostration, or an accidental injury, which arose out of and in the course of his employment, resulting in his death March 22, 1944.

Appellants defended on the grounds that the heat prostration did not arise out of the employment and there was no causal connection between the heat prostration and the employee's death.

The Commission found as a fact that "the deceased, W. C. Albertson, suffered an accidental injury on July 15, 1943, aggravating a pre-existing heart condition, resulting in his death on March 22, 1944," and in its conclusions of law said: "Upon consideration of all the evidence, the commissioner is of the opinion that the accidental injury of July 15, 1943, aggravated and accelerated an already diseased and pre-existing heart condition suffered by the deceased, W. C. Albertson, contributing to such condition and to his death on March 22, 1944; that the death of W. C. Albertson on March 22, 1944, was connected with the accidental injury of July 15, 1943, by a link of causation, thereby causing the death of the deceased to arise out of and in the course of his employment, within the meaning of the Act." Then follows the award in favor of appellee.

On appeal to the Sebastian circuit court, the findings of the Commission and award were affirmed. This appeal followed.

Appellants say that "this appeal presents two issues which may be broadly stated as follows: (1) the heat prostration did not arise out of the employment and is therefore not compensable, (2) there was no causal connection between the heat prostration and the death eight months later."

(1)

The record reflects that W. C. Albertson, the employee, 62 years of age, the husband of appellee, on July 15, 1943, while working as a glass cutter for appellant, Harding Glass Company, in its plant at Ft. Smith, suffered a heat stroke. Appellants earnestly argue that the heat prostration did not arise out of the employment and is not compensable as an accidental injury within the meaning of the compensation act. They say that "a heat prostration suffered by an employee in the course of his employment and while actually performing the work of that employment is not compensable unless the character of the work or the conditions under which he is working expose him to the hazards of heat prostration in a greater degree than that to which the public generally is exposed in that vicinity."

We cannot agree with this contention. To do so would, we think, place too narrow a construction on our compensation act. We have many times held that a liberal construction of the act must be given for the benefit of those whom it was intended to protect. *Hunter* v. *Summerville*, 205 Ark. 463, 169 S. W. 2d 579; *Williams Manufacturing Company* v. *Walker*, 206 Ark. 392, 175 S. W. 2d 380.

There is a *prima facie* presumptin that a claim for an award of compensation comes within the provision of the act (§ 24 (1)).

While appellants cite authorities holding to the contrary, we think the better rule, and the one supported by the great weight of authority, is that a heat prostration which resulted as here, and was sustained by a workman or employee, while engaged in the employment, and which grew out of the employment, whether due to un-

usual or extraordinary conditions or not, is deemed an accidental injury and compensable, and we so hold.

A case in point and which clearly announces the majority rule, is that of *Baltimore & O. R. Co.* v. *Clark,* 59 Fed. 2d 595: "The statute provides that the 'term "injury" means accidental injury or death arising out of and in the course of employment.' 33 U.S.C.A., § 902. It says nothing about unusual or extraordinary conditions; and there is no reasonable basis for reading such words into the statute. A workman who sustains heat prostration as the result of the working conditions under which he labors, has sustained an injury 'arising out of and in the course of his employment;' and the fact that other workmen may not have been affected or that he may have been rendered more readily susceptible to injury than they were by reason of his physical condition cannot affect the matter. As was said by the Court of Appeals of New York in *Hughes* v. *Trustee of St. Patrick's Cathedral,* 245 N. Y. 201, 156 N. E. 665: 'Heat prostration is an accidental injury arising out of and during the course of the employment, if the nature of the employment exposes the workman to risk of such injury. *Matter of Madura* v. *City of New York,* 238 N. Y. 214, 144 N. E. 505. Although the risk may be common to all who are exposed to the sun's rays on a hot day, the question is whether the employment exposes the employee to the risk. *Matter of Katz* v. *A. Kadans & Co.,* 232 N. Y. 420, 134 N. E. 330, 23 A. L. R. 401.' . . . The question as to whether heat stroke is to be deemed an accidental injury within the meaning of workmen's compensation acts has been frequently before the courts. In some cases distinction is made between injuries caused by natural and those caused by artificial heat; and in a few it is said that the injury must be caused by some unusual or extraordinary condition. The rule supported by the weight of authority, however, is that heat prostration which results from the employee's engaging in the employment, whether due to unusual or extraordinary condition or not, is to be deemed an accidental injury within the meaning of the statute. Citing many cases."

(2)

Appellants next contend that there was no causal connection between the heat prostration and the employee's death, approximately eight months' later. The facts, when viewed in their most favorable light to appellee, as we must do, are to the effect that prior to the employee's heat stroke on July 15, 1943, he had a heart ailment of which he was not aware and which had not manifested itself prior to that date, but that coincidental with the heat prostration, the heart disease from which the employee later died materialized, was aggravated and accelerated by the heat stroke and subsequently contributed to the employee's death approximately eight months later.

Dr. Gregg, the employee's family physician, testified that the deceased, employee, suffered a heat stroke or prostration July 15, 1943, which aggravated and accelerated a pre-existing heart disease and as a result the employee gradually grew worse until his death March 22, 1944.

Dr. Chamberlain, a heart specialist, testified: "Q. Generally speaking, doctor, a man with a condition such as he had which resulted in his disability up to the day of his death, would you say that the heat prostration such as in this case would shorten his life any? A. Well, again we encounter the same problem in a progressive disease. It is difficult to go into the time factor. I can say this—that the stress and strain to which the circulatory apparatus and heart was subject certainly would get to impair the function of his heart. Q. It would not lengthen his life, would it? A. Definitely not. Q. Would it shorten his life? A. It might. Q. Generally, would it shorten his life? A. In general, it is a factor which would be avoided by his physician. In other words, as I said previously, it wouldn't do him any good," and in his report on this employee on November 18, 1943, he made this statement: "Ultimate prognosis, poor. I regard this patient as being permanently and totally disabled. After conferring with Dr. Gregg, the family physician, I feel reasonably sure that this patient sustained an attack

of heat stroke of July 15, which marked the beginning of his disability.''

The appellee, the employee's widow, testified that, following the heat stroke, symptoms of heart trouble appeared; that although her husband went back to work some two weeks after the heat stroke and continued to work, assisted by a helper who did the heavy lifting, for approximately two months, and that during this time and until his death, it was necessary for him to lie down and rest on returning from work. He discontinued performing any chores about the house and yard following the heat stroke, and, although a regular church attendant, did not attend any church services and did not visit any friends or neighbors, which had been his custom prior to the heat stroke.

We have detailed facts which, we think, are substantial and tend to show that the heat stroke, suffered by the employee in the course of his employment and growing out of it, aggravated or accelerated, the heart disease from which he was suffering and contributed to his death. In such circumstances, the general rule supported by the weight of authority is that an award of compensation is proper although there was a pre-existing heart disease, if that disease was aggravated or accelerated by an accidental injury arising out of and in the course of the employment. We think this majority rule to be the better and sounder one and we follow it.

Mr. Schneider, in his work on Workmen's Compensation Text, Vol. 4, § 1328, p. 543, states the rule in this language: ''It may be stated generally that if the conditions of the employment, whether due to over-exertion, excessive heat, excessive inhalation of dust and fumes, shock, excitement, nervous strain or trauma, tend to increase an employee's blood pressure sufficiently to cause a cerebral hemorrhage, such result constitutes a compensable accident within the intent of most compensation acts, though the employee may have been suffering from a pre-existing diseased condition which predisposed him to such result, or where such result would have occurred in time due to the natural progress of such pre-

existing condition. . . . The majority of the American courts follow the English rule as set out in the case of *Clover, Clayton & Co.* v. *Hughes* (1910), A. C. 242: 'An accident arises out of the employment when the required exertion producing the accident is too great for the man undertaking the work, whatever the degree of exertion or condition of health.' "

This rule was adhered to by this court in the recent case of *McGregor & Pickett* v. *Arrington,* 206 Ark. 921, 175 S. W. 2d 210, where an employee, while performing his duties, died from a heart attack brought on by "an effort that was greater than his heart, already weakened by disease," could bear, (Headnote 2) and there this court said: "The liability is based, not upon any act or omission of the employer, but upon the existence of the relationship which the employee bears to the employment because of and in the course of which he has been injured. And this is not to impose liability upon one person for an injury sustained by another with which the former has no connection; but it is to say, that it is enough if there be a causal connection between the injury and the business in which he employs the latter—a connection substantially contributory, though it need not be the sole or proximate cause. It may be admitted that deceased would not have died if he had not had heart trouble, but, even so, it was shown that his labor in the course of his employment precipitated his trouble, and this employment was 'a connection substantially contributory' to his death. . . . As stated in some of the cases, it is no less an accident when a man suddenly breaks down than when there is a like mishap to the machine he is operating. Nor is it a defense that the workman had some predisposing physical weakness but for which he would not have broken down. If the employment was the cause of the collapse, in the sense that but for the work he was doing it would not have occurred when it did, the injury arises out of the employment," and in *J. L. Williams & Sons, Inc.,* v. *Moore,* 206 Ark. 766, 177 S. W. 2d 761, we said: "It is sufficient if the accident, coupled with a non-disabling malady, produced

disability which would not have occurred at that time but for the trauma."

Again in *Herron Lumber Co.* v. *Neal,* 205 Ark. 1093, 172 S. W. 2d 252, this court, quoting with approval from 71 C. J. 607, § 362-e, said: "Injury from strain or over-exertion due to a physical condition predisposing the employee to injury is an injury within the terms of the various workmen's compensation acts."

In *Commercial Casualty Ins. Co.* v. *Hoage,* 64 App. D. C. 158, 75 Fed. 2d 677, it was said: "There was nothing in his previous experiences to warn him. In these circumstances the thing that happened was fortuitous, and since there is enough evidence to show that the event accelerated his death, even though it was not the single cause, the award . . . must be sustained."

Finding no error, the judgment is in all things affirmed.