STURGIS BROTHERS v. MAYS.

4-7700                                              188 S. W. 2d 629

Opinion delivered July 9, 1945.

*Buzbee, Harrison & Wright,* for appellant.

*L. Weems Trussell,* for appellee.

McFADDIN, J. This is an appeal from a judgment of the Dallas Circuit Court affirming an award made by the Arkansas Workmen's Compensation Commission in favor of the appellee for the death of Al Mays an employee of the appellant, Sturgis Bros. The appellants argue that the evidence does not show that Al Mays' death occurred from an accidental injury arising out of and in the course of his employment.

The Arkansas Workmen's Compensation Commission, in making the award, rendered a comprehensive opinion embracing a statement of the case, findings of fact and conclusions of law. We copy this opinion.

### "Statement of the Case

"It is stipulated that Al Mays was an employee of Sturgis Brothers on May 16, 1944, and that on that date, about 4:30 p.m., he was stricken and died immediately.

"The respondents controvert liability to this claimant on the ground that the accidental death did not arise out of and in the course of his employment.

"The claimant, Jennie Mays, testified that she was the widow and the sole dependent of the deceased, Al Mays; that he was 56 years of age at the time of his death; that the burial expense was $100; that at the time of the deceased's death his average weekly wage was from $35 to $40 per week. The claimant further testified that the deceased on or about December 23, 1943, had double pneumonia, following which he seemed to be weak and easily tired; that he was treated during this illness by Dr. H. A. Cheatham; that he returned to work for this respondent some time in the month of January, 1944.

"Van Hughes testified that he was the saw partner of the deceased and that on May 16 they were cutting logs

from blown down pine timber; that it had not been down long enough to be considered dead and sawed about as easily as did standing timber; that about 4:30 p.m., which was about their usual quitting time, they were working on their last log; that they had sawed all the logs on the tree except the butt cut when it was noticed that a pine pole 6 or 8 inches in diameter and about 18 or 20 feet long had fallen across the log; that Mays started to remove this pole by himself but that the witness volunteered to help him and did; that after lifting off the pole which they raised about 3 feet in order to get it over a root, they then sawed the last cut of the log; that as they finished sawing the cut the deceased picked up the axe and measuring pole and straightened up; that as he did so he groaned and started to fall. By the time the witness reached him he only gasped a couple of times and was apparently dead when reached; that another workman, Riggs, assisted him in carrying the deceased to the shade. Witness Hughes further testified that they were working out in the sunshine and that it was a rather warm day; that the deceased had not complained of feeling ill; that the lifting of the pole required no more than usual exertion; that they sawed the last cut in their usual manner; that he had been a saw partner of the deceased since February and that the deceased at all times had been able to do his share of the work and did on the day of his death; that they had worked a pretty hard day, especially in the morning; that another employee, Higgs, had helped the deceased some during the day as Higgs was idle because his saw partner did not show up.

"Anson Higgs testified that he saw the deceased raise up after finishing the last cut and put his axe on the left shoulder and had a pole in his right hand; that he stepped back into a small hole, groaned, and the witness thought he was going to sit down, but he fell and died immediately; that the weather was normal.

"Dr. J. E. M. Taylor, of Sparkman, testified that he was called and saw the deceased in the woods about two hours after his death. He found no marks or bruises

on the body. It was his opinion that he died of heart failure, which is not uncommon in a person over 50 years of age; that these attacks may come on without warning and sometime without unusual exertion; that he doubts that Mays suffered a stroke because in apoplexy there is usually a period of unconsciousness from a few minutes to several hours or days; that death from such cause is not ordinarily instantaneous. He further testified that in his opinion lifting the pole was not the cause of death, but in bending over sawing the log, which was on the ground, when he raised up suddenly the heart failed to compensate and he died; that strenuous physical exertion tends to bring on heart attacks as there is weakness of heart muscle.

"According to the weather report admitted into evidence, the temperature on May 16, 1944, ranged from 69 at 7 a.m. to 89 at 4 and 5 p.m.

"It was also shown by stipulation that the deceased and Hughes had on the day of May 16 cut 5,511 feet of logs in 7 hours' time.

"Dr. H. A. Cheatham, of Princeton, testified by deposition that he treated the deceased for double pneumonia in December, 1943; that following the attack of pneumonia of this kind the heart muscles suffer severe strain; that no doubt at the deceased's age he had never recovered but where there was a weakened heart condition exertions made at the close of a day's work when the heart muscle is tired would under all circumstances as set out above be sufficient cause for collapse and immediate death; that under the weather conditions prevailing on May 16 and taking into consideration the fact that the deceased and his partner must have been exerting themselves to have cut 5,511 feet of logs in a short time, then it would be possible for death to have been caused by hard labor and extreme heat. The heart condition would be aggravated by hard labor and heat, but taking the deceased's age and the fact he had double lobar pneumonia into consideration, it is his opinion the deceased could have had a complication or weakened condition preventing a full recovery; that he knew nothing of the

deceased having heart disease; that after suffering an attack of pneumonia it would not be unusual for a man of the deceased's age to die suddenly of heart failure.

"Upon this statement, the Commission makes the following

"Findings of Fact

1.

"That the parties to this cause are bound by the provisions of the Arkansas Workmen's Compensation Act.

2.

"That the respondent employer, Sturgis Brothers, has secured payments of workmen's compensation benefits through a policy of insurance issued by the Commercial Standard Insurance Company.

3.

"That the deceased, Al Mays, sustained an accidental injury arising out of and in the course of his employment with the respondent employer on May 16, 1944.

4.

"That at the time of the accidental death of Al Mays, the claimant widow, Jennie Mays, was living with and dependent upon him for support.

"Upon the foregoing findings of fact, the Commission bases the following

"Conclusions of Law

"The testimony before the Commission is that this deceased in December, 1943, had suffered an attack of double lobar pneumonia according to his physician, Dr. Cheatham, this could have left his heart in a weakened condition. In taking this fact into consideration, as well as the age of the deceased, and the fact that he performed a strenuous day's work on May 16, 1944, it is his opinion that the last effort expended in straightening up from the last cut made by him, that this deceased's

heart failed to compensate, causing death; that strenuous physical exertion does tend to bring on such attacks where there is a weakened heart condition.

"The Commission has held from time to time that under the Workmen's Compensation Act an accidental injury to the physical structure of the body need not be the result of external violence, but may result internally from overexertion. It is our opinion that the evidence shows that this deceased, while performing his duties as an employee for the respondent employer, put forth an effort which was greater than his heart, already possibly weakened by disease, and no doubt fatigued by long hours of work, could bear. Thus the deceased suffered an exertion, the accidental and unexpected result of which was an injury to his heart, causing his death. We, therefore, hold that the deceased's death on May 16, 1944, resulted from an accidental injury arising out of and in the course of his employment."

The Commission found against the appellants on the facts and on the law.

On the fact question: it will be observed that the Commission decided, on controverted testimony, that the death of the workman resulted from an accidental injury arising out of and in the course of his employment. The testimony of Dr. Cheatham was to that effect. This court has repeatedly held that the findings of fact of the Workmen's Compensation Commission must be given the same effect as the verdict of a jury or of a circuit court sitting as a jury; and that the circuit court and the supreme court, on appeal, will not set aside the Commission's findings when based on substantial evidence. See *Fordyce Lumber Co.* v. *Shelton,* 206 Ark. 1134, 179 S. W. 2d 464; *Baker* v. *Silaz,* 205 Ark. 1069, 176 S. W. 2d 419; *Ozan Lumber Co.* v. *Garner, ante,* p. 645, 187 S. W. 2d 181, and cases there cited.

On the law question: what was said in *McGregor & Pickett* v. *Arrington,* 206 Ark. 921, 175 S. W. 2d 210, applies with full force and effect to the case at bar. There, we quoted the finding of the Commission, as follows:

" 'In our opinion the evidence shows that the decedent, while performing his duties as an employee for respondent employer, put forth an effort that was greater than his heart, already weakened by disease and no doubt fatigued by long hours of labor, could bear. Thus, the decedent suffered an exertion, the accidental and unexpected result of which was an injury to his heart, causing his death. We, therefore, hold that decedent's death resulted from an accidental injury arising out of and in the course of employment,' " and we said: "It may be admitted that deceased would not have died if he had not had heart trouble, but, even so, it was shown that his labor in the course of his employment precipitated his trouble, and this employment was 'a connection substantially contributory' to his death."

And we quoted with approval from *Guay* v. *Brown Co.*, 83 N. H. 392, 192 Atl. 697, 60 A. L. R. 1284: " 'As stated in some of the cases, it is no less an accident when a man suddenly breaks down than when there is a like mishap to the machine he is operating. Nor is it a defense that the workman had some predisposing physical weakness but for which he would not have broken down. If the employment was the cause of the collapse, in the sense that but for the work he was doing it would not have occurred when it did, the injury arises out of the employment.' " See, also, *Heron Lumber Co.* v. *Neal*, 205 Ark. 1093, 172 S. W. 2d 252; and *Harding Glass Co.* v. *Albertson, ante,* p. 866, 187 S. W. 2d 961.

Thus the facts and the law are settled against appellants. Affirmed.