TRI-STATE CONSTRUCTION COMPANY *v.* WORTHEN.

5-548                                            274 S. W. 2d 352

Opinion delivered January 10, 1955.

*S. Hubert Mayes, Mehaffy, Smith & Williams* and *B. S. Clark,* for appellant.

*L. A. Hardin* and *John Shamburger,* for appellee.

ED. F. McFADDIN, Justice. This is a Workmen Compensation claim: the Commission disallowed the claim; the Circuit Court reversed the Commission; and the case is here on appeal. Appellee, Elbert H. Worthen, was employed by appellant, Tri-States Construction Company, when he collapsed, while on the job, at about 3:00 P. M. on May 29, 1951. He suffered a cerebral hemorrhage, and is now totally and permanently disabled.

The Commission found that Worthen's collapse was not the result of his work, but was the result of a preexisting diseased condition.[1] If there is substantial evidence to sustain the Commission's factual findings, then

---

[1] The Commission's finding concludes with this language: "Upon consideration of all the evidence, it is our opinion that the claimant's disability is not the result of an accidental injury, within the meaning of the Act, but is the result of a pre-existing diseased condition."

its decision has the force and effect of a jury verdict. *Hughes* v. *Tapley,* 206 Ark. 739, 17 S. W. 2d 429; *Fordyce Lbr. Co.* v. *Shelton,* 206 Ark. 1134, 179 S. W. 2d 464; and *Sturgis Bros.* v. *Mays,* 208 Ark. 1017, 188 S. W. 2d 629. But the Circuit Court, in a written opinion, reached the conclusion that there was no substantial evidence to sustain the Commission in denying compensation to Worthen. Our study convinces us that the Circuit Court was correct.

In a long line of cases we have held that when the worker collapses because of excessive work load or unusual strain, he is entitled to compensation, even though he had a pre-existing weakness which contributed to his collapse. One such case is *Triebsch* v. *Athletic Mining & Smelting Co.,* 218 Ark. 379, 237 S. W. 2d 26; and we quote from that *in extenso:*

"But on the *accidental injury* phase of the case, the uncontradicted evidence shows that the claimant suffered *an accidental injury* within the purview of our cases such as: *Herron Lumber Co.* v. *Neal,* 205 Ark. 1093, 172 S. W. 252; *McGregor* v. *Arrington,* 206 Ark. 921, 175 S. W. 2d 210; *Harding Glass Co.* v. *Albertson,* 208 Ark. 866, 187 S. W. 2d 961; *Sturgis Bros.* v. *Mays,* 208 Ark. 1017, 188 S. W. 2d 629; *Murch-Jarvis Co.* v. *Townsend,* 209 Ark. 956, 193 S. W. 2d 310; and *Batesville White Lime Co.* v. *Bell,* 212 Ark. 23, 205 S. W. 2d 31.

"In *Herron Lumber Co.* v. *Neal, supra,* the worker had a gastric ulcer which ruptured while he was performing a task that required extra energy. We held that the worker suffered an *accidental injury* within the purview of the Workmen's Compensation Law, and quoted from 71 C. J. 607:

" 'Injury from strain or over-exertion due to a physical condition pre-disposing the employee to injury is an injury within the terms of the various workmen's compensation acts . . .'

"In *McGregor* v. *Arrington, supra,* the worker was a carpenter. He had an impaired heart, and, in trying

to move a plank, he over-exerted himself and suffered a collapse and died. We allowed compensation, saying that the decedent's death resulted from an accidental injury arising out of and in the course of his employment.

"In *Harding Glass Co.* v. *Albertson, supra,* the worker also had an impaired heart; and while at work suffered a heat prostration and died. In allowing compensation, we quoted from Schneider on Workmen's Compensation Text, Vol. 4, 1328, p. 543:

" 'It may be stated generally that if the conditions of the employment, whether due to over-exertion, excessive heat, excessive inhalation of dust and fumes, shock, excitement, nervous strain or trauma, tend to increase an employee's blood pressure sufficiently to cause a cerebral hemorrhage, such result constitutes a compensable accident, within the intent of most compensation acts, though the employee may have been suffering from a pre-existing diseased condition which pre-disposed him to such result, or where such result would have occurred in time due to the natural progress of such pre-existing condition. . . . The majority of the American Courts follow the English rule as set out in the case of *Clover, Clayton & Co.* v. *Hughes* (1910), A. C. 242: 'An accident arises out of the employment when the required exertion producing the accident is too great for the man undertaking the work, whatever the degree of exertion or condition of health.'

"In *Sturgis Bros.* v. *Mays, supra,* the worker, in the course of his employment, overtaxed his previously weakened heart and died. In allowing compensation, we quoted a leading case:

" 'Nor is it a defense that the workman had some pre-disposing physical weakness but for which he would not have broken down. If the employment was the cause of the collapse, in the sense that but for the work he was doing it would not have occurred when it did, the injury arises out of the employment.'

"In *Murch-Jarvis Co.* v. *Townsend, supra,* the worker became disabled from inhaling fumes and dust in the

course of his work in a smelter room. We held such disability to be 'an accidental injury within the meaning of our Workmen's Compensation Law', saying:

" 'There are numerous cases from other jurisdictions holding that a disease, or an aggravation thereof, resulting from inhalation of dust particles or fumes may constitute an accident, or injury, within the meaning of the particular act involved.'

"In *Batesville White Lime Co.* v. *Bell, supra,* the inhalation of dust particles caused heart trouble, we held such to be an accidental injury, saying:

" 'Now there is nothing in the proof in this case to justify a conclusion that the injury to appellee's heart by breathing the excessive amount of dust was one which appellee might have reasonably expected or anticipated. Certainly it was accidental as far as he was concerned; and there is much authority for a holding that an injury, not necessarily the result of one impact alone, but caused by a continuation of irritation upon some part of the body by foreign substances may properly be said to be accidental.' "

Then, in *Triebsch* v. *Athletic Mining & Smelting Co., supra,* we applied the rule of the quoted cases to the facts. there existing, and announced our conclusion in this language:

"Therefore, to summarize: we have in the case. at bar undisputed facts which are similar in essential respects to those which existed in the six cases hereinbefore discussed, in each of which compensation was awarded. These facts are: *a pre-existing ailment, an increased and overtaxing effort to accomplish the work load under. the conditions existing, and a collapsed worker resulting therefrom.* These make a case of accidental injury within the purview of the Workmen's Compensation Law."' (Italics our own.)

With our previous cases as the guide, we come to the facts in the case at bar.

I. *A Pre-existing Ailment.* Elbert Worthen was 47 years of age in May, 1951. He had been working for Tri-States Construction Company for 12 or 13 years; and all the evidence reflects that the owner of the Tri-States Company, Mr. Elias, and the Company director, Dr. Cullen, had been most solicitous for Worthen's welfare and had shown him every consideration.

On June 2, 1949, Worthen, at the direction of Mr. Elias, went to Dr. Cullen's office, who found Worthen complaining of a pain in the pit of his stomach. Dr. Cullen found that he was suffering with high blood pressure (160/120), had some damage to his kidneys, and had disease of the heart, arteries and kidneys. Dr. Cullen then placed Worthen on limited exercise and limited work. In September, 1949, Dr. Cullen examined Worthen and found that he had some weakness in his right arm and an elevated blood pressure. Dr. Cullen made a diagnosis that Worthen had suffered a mild stroke; recommended to Mr. Elias that Worthen be given a job easier than a regular one; and cautioned against Worthen doing strenuous work, or getting overheated. On May 12, 1950, Mr. Worthen, while working for Tri-States, fell from a scaffold, and an X-ray revealed that he had three broken ribs; and he was unable to work until May 31, 1950.

The next time Dr. Cullen saw Worthen was when he suffered the collapse of May 29, 1951, involved in this case. Admittedly, we have here a case of pre-existing ailment on the part of this worker, which necessitated a work load lighter than that for the normal worker.

II. *An Increased and Overtaxing Effort to Accomplish the Work Load Under the Conditions Existing.* On May 29, 1951, the Tri-States Construction Company was engaged in the construction of the Safeway Store at 12th and Lewis Streets in Little Rock. Inside the building, there was a *covered* pit, 22 feet long, 4 feet deep, and 3½ feet wide. This pit was to contain a safe and the mechanism to operate the electric doors. The bottom and side walls of the pit were concrete. The material that constituted the covering is not shown; but the top

of the pit[2] was covered. The only entrance to the pit was a manhole, 30 inches in diameter. A person entering the pit lowered himself from the floor level of the store by his hands resting on the manhole—the effect of which was to throw the weight of his body on his arms and shoulders. Once in the pit, a person desiring to get out, stepped on a box about 18 inches high, grasped with his hands the top of the manhole and pulled himself up by lifting his body.

To prevent water from continuing to seep into the pit, Worthen and another worker named Snowden, were detailed to apply a preparation known as "Ironite" to the walls of the pit. The "Ironite" was mixed with cement and water in a wheelbarrow a short distance from the building, and carried in buckets by the two workers (Snowden and Worthen) from the wheelbarrow, down the manhole, into the pit. Worthen and Snowden started to work at 8:00 o'clock in the morning, took off 30 minutes for lunch, and continued to work until 3:00 o'clock in the afternoon, when Worthen collapsed. The "Ironite" gave off a considerable amount of ammonia, so that every two or three minutes it was necessary for the workers to go to the manhole to get fresh air. There was a 200-watt electric light in the pit. The outside temperature was 91° Fahrenheit, but the temperature inside the pit was 105° Fahrenheit. There was an electric fan in one end of the pit, but even with the fan running, the temperature in the covered pit was 105° Fahrenheit. Necessarily, the workers in the pit were required to work in cramped quarters.

Dr. Cullen testified that Worthen, working in that covered pit and being obliged to get in and out as he did, performed "awfully hard physical labor" for Worthen; and that "extreme heat is not good for anybody who has high blood pressure." When interrogated on the effects of such over-exertion and over-exhaustion, Dr. Cullen said:

[2] One of the definitions of "pit" contained in Webster's dictionary is "a covered excavation." We emphasize that the pit here was covered.

"In either case I would say the effects of over-exertion, or over-exhaustion (and if he had to run back and forth to get fresh air, that would surely be hard work, and had to swing himself up by his arms), would be the hardest kind of work for me . . . In other words, in the patients I see like that every day in the office: they ask me what to do. I always tell them: 'first of all, overworking is out'. I even tell them they can't use their arms for doing ordinary things around home, like out in the garden, or anything like that: digging, hoeing, or anything like that. (I tell them) not to paint overhead; and of course, not to hurry at all; and of course, not to get overheated . . . for any man who has hardened arteries—all of the activities that I mentioned are apt to be harmful to him."

Thus we have a case of "increased and overtaxing effort to accomplish the work load under the conditions existing"; and there is no substantial evidence to the contrary.

III. *A Collapsed Worker Resulting Therefrom.* That Worthen collapsed on the job and suffered a cerebral hemorrhage, or a cerebral thrombosis, is admitted; and that he is totally and permanently disabled, is likewise admitted. In justice to the Commission's findings, it is fair to say that a large portion of the evidence shown before the Commission was concerned with (a) the chemical properties of the "Ironite"; (b) the amount of ammonia released in applying the "Ironite" in the covered pit; and (c) the effect of ammonia on blood-pressure. Qualified doctors testified as to whether the ammonia in the covered pit caused the cerebral hemorrhage or thrombosis suffered by Worthen. On that phase of the case, the Commission concluded that the ammonia fumes were not the cause of the cerebral hemorrhage or thrombosis, and there is ample evidence to sustain such findings.

But in emphasizing the chemical content of ammonia and its effect on blood pressure, the Commission apparently lost sight of the uncontradicted evidence which shows: (1) a pre-existing ailment; (2) an increased and

overtaxing effort to accomplish the work load under the conditions existing; and (3) a collapsed worker resulting therefrom. As we said in *Triebsch* v. *Athletic Mining Co.*, 218 Ark. 379, 237 S. W. 2d 26: "These make a case of accidental injury within the purview of the Workmen's Compensation Law". The Circuit Court judgment set aside the order of the Commission denying compensation, and remanded the case to the Commission, with directions to enter an order granting Worthen the full benefits to which he is entitled under the Workmen's Compensation Law.

The Circuit Court judgment is in all things affirmed.