HAMILTON *v.* KELLEY-NELSON CONSTRUCTION Co.

5-1440                                          309 S. W. 2d 323

Opinion delivered February 3, 1958.

*J. Fred Jones*, for appellant.

*Wright, Harrison, Lindsey & Upton,* for appellee.

Ed. F. McFaddin, Associate Justice. This is a Workmen's Compensation case. The precise question to be decided is whether there is substantial evidence to support the finding of the Commission, that appellant's healing period terminated on June 27, 1956 without any residual disability.

That appellant received an injury on October 12, 1955, is admitted. On that date he and two other men were working for appellee, Kelley-Nelson Construction Company, in sliding a steel beam from a truck. Appellant, a man 52 years of age, was braced under the beam when it was pulled clear of the truck. The other two men dropped their part of the load, shifting the entire weight to the appellant. He received a lumbosacral strain and was sent to Dr. Carruthers for examination and treatment. Appellant never resumed full work thereafter. He was examined and treated by numerous doctors at the instance of appellee's insurance carrier from October 12, 1955 to January 26, 1957. On February 12, 1957 the Commission held its final hearing in this matter; and on March 28, 1957 rendered its decision, finding, *inter alia,* that appellant had fully recovered on June 27, 1956 with no residual disability. The Circuit Court affirmed the Commission's decision; and appellant brings this appeal urging that there is no substantial e v i d e n c e to support the Commission's finding.

As aforesaid, appellant was examined and treated by numerous physicians from October 12, 1955 until Jan-

uary 26, 1957. The reports of these physicians to appellee's insurance carrier are in the record. Under date of October 17, 1955, Dr. Carruthers reported that he examined appellant on October 12, 1955 and found him suffering with "severe lumbosacral strain." The x-rays failed to show any evidence of fracture. He was admitted to the hospital on October 15th for traction, heat, body baths, and medication by vein. On October 25th Dr. Carruthers reported of appellant: "He is now reporting to my office daily for additional heat treatment." On November 15th Dr. Carruthers reported that appellant was receiving daily treatments; and that he had advised appellant to try to resume work, "on a trial and error basis and to report back to my office in one week." On January 12, 1956 Dr. Carruthers reported no substantial change: "He has followed out that old saying, 'A sprain is worse than a break.'"

Appellant was sent to other doctors. An x-ray of January 31, 1956 revealed no fractures but disclosed a congenital defect in the region of the 5th lumbar vertebra and the sacrum, showing a condition called "second degree spondylolisthesis." This condition is thoroughly explained in the testimony; but Webster's International Dictionary defines it as "a forward displacement of a lumbar vertebra especially on the sacrum."

On February 3, 1956 Dr. Nixon reported to the insurance carrier the following diagnosis and prognosis of appellant's condition:

"DIAGNOSIS:

1. From examination, dental caries.

2. From history, physical and x-ray examination, a second degree spondylolisthesis.

3. From history and physical examination, a lumbosacral strain.

PROGNOSIS:

This man was instructed to apply considerable heat to his lower back, and instructed in exercises, designed to increase the strength of his lumbar muscles. I sug-

gested to him that he return to work of a light type for one month, and then return for re-evaluation. I see no reason to expect any permanent disability as the result of this injury.''

Again, on July 2nd, Dr. Nixon reported to the insurance carrier that he had examined the appellant on June 27th. That report will be copied in full later. Appellant tried to resume work but was unable to do so. He was examined by Dr. Semmes of Memphis, who, on August 6, 1956, recommended that appellant be referred to an orthopedic surgeon for a back support or other treatment. Thereupon, Dr. Steele treated appellant and made a three-page report in November, 1956, recommending further hospitalization and treatment. The Commission so ordered; and appellant was returned to the hospital on January 17, 1957 and remained there as a patient of Dr. Steele until January 26, 1957. Dr. Steele testified before the Commission on February 12, 1957 that appellant's condition was caused by the trauma of October 12, 1955[1]. Dr. Steele testified before the Commission on February 12, 1957 that the appellant had a 5 per cent to 10 per cent disability to his body as a whole. Notwithstanding all of the above, the Commission found, as aforesaid, that on June 27, 1956 appellant had fully recovered from the lumbosacral strain and was without any residual disability.

The only statement in the record to support such a date and finding is the letter that Dr. Nixon wrote the Commission under date of July 2, 1956; and we copy it in full:

''Lum Hamilton returned to my office on June 27, 1956, at which time he complained of pain in his lower back. He has worked a few days since his last visit. He is getting no better or worse.

---

[1] Dr. Steele explained spondylolisthesis as follows: ''. . . it is a defect of development in the bones of the lower spine and it is usually found between the last lumbar vertebra and the sacrum. The defect is placed in such a way it allows the fifth or last lumbar vertebra to drift forward slowly on the surface of the sacrum since it is unchecked and it is displaced forward.''

"Examination reveals that he still has his bad teeth. He locates his pain in the lumbosacral area. The shape of the back is good. The muscles are soft, and he has a good range of motion. There continues to be a positive test on anteroposterior rotation of the lumbosacral joint.

"He was again instructed to seek dental care, and to continue the application of heat. It is my opinion that his disability at this time is due to the presence of spondylolisthesis. I see no reason to further examine or treat him. I can find no evidence upon which to base any permanent disability."

It must be remembered that Dr. Nixon had reported to the Commission on February 3, 1956 that appellant had three ailments—bad teeth, second degree spondylolisthesis, and a lumbosacral strain,—and Dr. Nixon had recommended that the appellant return to work of a light type for a month and then return for re-evaluation. The appellant tried to resume work and went back to Dr. Nixon on June 27th. Dr. Nixon reported at that time, "He is getting no better or worse." Certainly this statement does not indicate that appellant was restored to the ability to work. Dr. Nixon further said that the disability at that time was due to the spondylolisthesis. The disabling effect of such condition had never existed prior to the injury. Appellant probably had the congenital defect in the 5th lumbar vertebra ail of his life, but he never had any trouble from it until he got the severe lumbosacral strain on October 12, 1955; and then the spondylolisthesis followed in the same region of the lumbosacral strain. Dr. Nixon's report of July 2, 1956 is the only place in the evidence where the date of June 27, 1956 is indicated; and Dr. Nixon's letter clearly shows that appellant had not recovered on that date.

We have repeatedly held that an injury which brings about an aggravation of a preexisting condition is compensable under our Workmen's Compensation Law. In *Sturgis Bros.* v. *Mays,* 208 Ark. 1017, 188 S. W. 2d 629, we said:

"Nor is it a defense that the workman had some predisposing physical weakness but for which he would not have broken down. If the employment was the cause of the collapse, in the sense that but for the work he was doing it would not have occurred when it did, the injury arises out of the employment."

See also *Herron Lbr. Co.* v. *Neal,* 205 Ark. 1093, 172 S. W. 2d 252; *McGregor & Pickett* v. *Arrington,* 206 Ark. 921, 175 S. W. 2d 210; *Harding Glass Co.* v. *Albertson,* 208 Ark. 866, 187 S. W. 2d 961; *Green* v. *Lion Oil Co.,* 215 Ark. 305, 220 S. W. 2d 409; *Triebsch* v. *Athletic Mining,* 218 Ark. 379, 237 S. W. 2d 26; *Shanhouse* v. *Simms,* 224 Ark. 86, 272 S. W. 2d 68; and *Tri-State Const.* v. *Worthen,* 224 Ark. 418, 274 S. W. 2d 352.

We, therefore, conclude that there is no substantial evidence to show that the appellant had completely recovered without residual disability on June 27, 1956. The judgment of the Circuit Court is reversed and the cause is remanded to the Circuit Court, with directions to set aside its judgment and enter a judgment reversing the decision of the Commission and remanding the case to the Commission for further proceedings not inconsistent with this opinion.

ROBINSON, J., not participating.

