SAFEWAY STORES *v.* HARRISON.

5-1909                                    328 S. W. 2d 131

Opinion delivered October 19, 1959.

*Mehaffy, Smith & Williams,* for appellant.

*Langston & Walker,* for appellee.

ED. F. McFADDIN, Associate Justice.   This is a Workmen's Compensation case.   Emmett Allen Harrison collapsed and died while at work for Safeway Stores; and a claim was filed for compensation.   The trial referee, and also the full Commission, denied a recovery to the widow and children of the employee.   The Circuit Court reversed the Commission and found that compensation should be awarded; and the employer, Safeway, has brought this appeal.   Both sides recognize the rule that if the findings of fact of the Workmen's Compensation Commission are supported by substantial evidence, then such findings must be sustained. *J. L. Williams & Sons* v. *Smith,* 205 Ark. 604, 170 S. W. 2d 82.

So the crucial issue on this appeal is whether there is substantial evidence to support the Commission's findings in denying compensation.   The Circuit Court answered in the negative.[1]   On this appeal Safeway con-

---

[1] The Circuit Court order recites that Safeway "did not offer medical testimony to contradict the medical testimony of the claimants; that the order of the Commission is not supported by substantial evidence and should be set aside".  Tr. Vol. 1, p. 1.

tends: (a) that "the Circuit Court erroneously shifted the appellee's burden of proving a causal connection between the death and the employment"; and (b) "the evidence affirmatively shows that it was the deceased's rheumatic heart condition, and not his employment, which caused his death".

The basic facts reflect that Emmett Allen Harrison was 26 years of age at the time of his death. He was an employee of Safeway Stores, and had been so employed for several years. While at work on Friday, November 16, 1956, Harrison collapsed and died of a heart seizure. Immediately prior to his collapse he was engaged in manually removing produce from boxes resting on a pulley truck and placing the produce on the counters. Cause of death, according to the death certificate, was coronary occlusion. Safeway contends that Harrison had a "terrible rheumatic heart condition" ever since childhood and that death occurred because of the rheumatic heart condition and not because of the work he was doing. The Commission agreed with Safeway, holding that there was no causal connection between the work and the collapse.[2] But we conclude that there was no evidence to support the Commission's findings to that effect. We have repeatedly held that when a person has a pre-existing weakness, such as a heart condition, and the work load which the employer requires of the worker causes a collapse, then such employee is entitled to compensation. Some of our cases so holding are: *McGregor & Pickett* v. *Arrington,* 206 Ark. 921, 175 S. W. 2d 210; *Harding Glass Co.* v. *Albert-*

[2] The Commission said: "Now, in the light of this background, have we evidence which will sustain the burden of proving that the work deceased was doing on the day of his death or on days prior thereto, was causally connected with that death as either a precipitating or aggravating factor? We think not. The death of deceased from heart failure was to be expected with or without exertion. To say, under these circumstances, that exertion of a degree to which this deceased had become accustomed did in anywise contribute to the death, is sheer speculation. It would be as well to speculate that deceased lived longer because of the very exercise regime he regularly engaged in in his work. Thus we do not think the cases cited herein constitute a precedent making instant claim compensable inasmuch as the causation factor as opposed to a natural death has not been proven. True, the only medical opinion of record, being that of Dr. Anderson Nettleship, is to the contrary."

*son,* 208 Ark. 866, 187 S. W. 2d 961; and *Sturgis Bros.* v. *Mays,* 208 Ark. 1017, 188 S. W. 2d 629.

Here, the evidence is undenied that Harrison had suffered with a rheumatic heart condition since early childhood. Back in 1951 Safeway had him examined by a physician and the report showed that he had a bad heart condition. The doctor's recommendation was, "reject unless accepted by medical director". Formerly, Safeway had a man to assist Harrison in the heavy work, but that extra man quit a month or six weeks before Harrison's collapse. Mr. Conn, who was employed as the produce manager at the Safeway Store where Harrison worked, testified that on the morning of November 16th, the date of Harrison's collapse, somewhere between 10,000 and 12,000 pounds of produce arrived at the store and it was Harrison's job to unload it. Mr. Conn also testified as to conditions at the time of Harrison's collapse:

"A. Allen had fallen on his back and was lying flat on his back, breathing, just gasping; no continuous breathing at all.

Q. Was all the produce you had given him still on the truck or not?

A. No, sir, he had unloaded one crate of potatoes and had put the apple box full of onions on the rack and turned around — it looked like he had fallen then.

Q. Why did it look like after — he fell after the crate with the onions?

A. The potato crate stacked on the buggy was setting on the floor and the apple box had fallen off at the side. It wasn't on the truck.

Q. What would you estimate the weight of a crate of potatoes such as he had to be?

A. Sixty pounds."

There is no evidence that contradicts the recited facts. The claimants introduced the testimony of two doctors, one of whom had treated Harrison for several

years and testified of his bad heart, and the other doctor testified unqualifiedly that the work was the cause of Harrison's collapse and death. The said medical testimony was uncontradicted; but the Commission refused to follow the testimony. The case at bar is ruled by such cases as the following: *McGregor & Pickett* v. *Arrington,* 206 Ark. 921, 175 S. W. 2d 210; *Harding Glass Co.* v. *Albertson,* 208 Ark. 866, 187 S. W. 2d 961; *Sturgis Bros.* v. *Mays,* 208 Ark. 1017, 188 S. W. 2d 629; *Frank Lyon Co.* v. *Scott,* 215 Ark. 274, 220 S. W. 2d 128; *Qaulity Excelsior Coal Co.* v. *Maestri,* 215 Ark. 501, 221 S. W. 2d 38; *Triebsch* v. *Athletic Mining & Smelting Co.,* 218 Ark. 379, 237 S. W. 2d 26; *Scobey* v. *Southern Lumber Co.,* 218 Ark. 671, 238 S. W. 2d 640, 243 S. W. 2d 754; *Bryant Stave & Heading Co.* v. *White,* 227 Ark. 147, 296 S. W. 2d 436; and *Bettendorf & Co.* v. *Kelly,* 229 Ark. 672, 317 S. W. 2d 708.

We therefore conclude that the Circuit Court was correct in reversing the Commission. We affirm the Circuit Court, and direct that the Circuit Court remand the case to the Commission with directions to award compensation.