MYRTLE DOUGAN ET AL *v.* DOUGLAS BOOKER ET AL

5-3945                                                           407 S. W. 2d 369

Opinion delivered October 17, 1966
[Rehearing denied November 21, 1966.]

*John L. Wilson* and *S. Hubert Mayes Jr.,* for appellant.

*Riddick Riffel,* for appellee.

HUGH M. BLAND, Justice. This is a Workmen's

Compensation case. The appellants are Mrs. Myrtle Dougan, widow of Neuman Elmore Dougan, deceased, for herself and the other dependents of Mr. Dougan who suffered a heart attack and died on November 2, 1963 while working for Douglas Booker, the appellee. She claims that Mr. Dougan's collapse and death arose out of and in the course of his employment and that point is disputed by the employer and his insurance carrier.

There was a hearing on the claim before the Referee on June 3, 1964 and at that hearing Dr. G. G. Hairston testified that he had been Mr. Dougan's family physician; that he had treated him in a previous heart attack; that he knew Mr. Dougan's condition; that he had advised Mr. Dougan not to overtax himself, and if he had any symptoms of chest pain or fatigue to stop and rest. Dr. Hairston stated that if on November 2, 1963 Mr. Dougan was underneath a house, holding up a 2 x 6 piece of lumber with one hand and nailing it with the other, such exertion would have a straining effect on him and that such straining effect, in Dr. Hairston's opinion, caused the heart attack which Mr. Dougan suffered on the job.

Dr. Hairston was the only medical witness who appeared and testified in person. The other medical witnesses testified by deposition. At the conclusion of the hearing before the Referee on June 3, 1964, it was agreed that expert witnesses could be presented later. On September 17, 1964 the claimants took the deposition of Dr. Phillip Cullen. He pointed out that the evidence showed that Mr. Dougan had done heavy work just before his heart attack and that it was his (Dr. Cullen's) opinion that the excess strain of the heavy work was the cause of the heart attack. The case was allowed to drag along until November 11, 1964 when the respondent insurance carrier took the deposition of Dr. Alfred Kahn. He testified that he never saw Mr. Dougan, but had reviewed the transcript of the testimony taken on June 3rd; that from a reading of that testimony and in answer to a detailed hypothetical question, it was his

(Dr. Kahn's) opinion that Mr. Dougan's work did not contribute to his death. With this opinion evidence of Dr. Kahn's, a Referee (other than the one who heard the witnesses on June 3rd) wrote an opinion on February 5, 1965 denying the claim. The Commission (only two members acting)[1] heard no more evidence and on June 2, 1965 adopted the written opinion of the Referee.

The Circuit Court affirmed the judgment of the Commission and the appellants bring appeal to this Court. The employer-employee relationship is admitted. The factual situation is as follows:

During the week Neuman Elmore Dougan, who had a previous history of heart trouble, worked at Ark-La Village and on weekends and holidays worked as a carpenter for Douglas Booker, a contractor at Emmet, Arkansas. At about 7:30 a.m. on Saturday, November 2, 1963, Dougan did various carpentry work for Booker at a residence where he was required to work on his knees or in a stooped position. He returned to his home about 9:00 a.m. to get a crowbar and took a dose of Milk of Magnesia because he thought his stomach was bothering him. He then left to work at the Home Economic Cottage at Emmet High School where his employer was doing some remodeling work. He returned home at noon still complaining of his stomach. He went back to the Home Economic Cottage and worked by himself for a while and was joined by another worker at 2:00 p.m. The two of them lifted, held and nailed a 2 x 6 board underneath the floor of the house from a cramped position and then sawed and nailed a 4 x 8 piece of plywood on the floor of the house. The two men loaded scrap lumber onto a truck and took it to the employer's house and returned with the employer to the Home Economic Cottage where further work was done by the three of them.

---

[1]Honorable Osro Cobb was Chairman of the Workmen's Compensation Commission at the time of such opinion, but he did not participate in the decision on the claim by the Workmen's Compensation Commission and is not participating in the case in this Court.

At about 2:00 p.m. Dougan again returned home to get a piece of plywood and asked his wife to go to Prescott to get a prescription refilled. After working a while longer, deceased complained of what he thought was stomach trouble. He continued to work and handed lumber to his employer and the other worker from a seated position. At approximately 4:30 p.m. his employer directed him to go about one block from the Cottage to turn on the water supply to the Cottage. After he had been gone for approximately fifteen minutes, he was discovered lying on the ground by the water valve and was taken to the hospital in the employer's car but was pronounced dead of a heart attack upon arrival.

We thus have a case before us where a worker with a bad heart put forth unusual exertion in his work and collapsed on the job and died; and yet compensation has been denied his widow and dependents. Such is a miscarriage of justice in that the Commission failed to give the workmen's compensation law a liberal interpretation in favor of the claimant which has been our frequently stated rule.

In *Boyd* v. *McKown*, 226 Ark. 174, 288 S. W. 2d 614, the Commission had denied compensation, yet this Court awarded compensation, saying that the testimony relied on by the Commission to deny compensation was not substantial:

"* * * All of the doctors who examined the claimant over a period of time stated that his disability is due to silicosis; evidence to the contrary is very weak and not substantial. Whether there is substantial evidence is a matter of law. *Arkansas State Highway Commission* v. *Byars*, 221 Ark. 845, 256 S. W. 2d 738.

The law of this State is that workmen's compensation cases should be broadly and liberally construed, and that doubtful cases should be resolved in favor of the claimant. *Arkansas National Bank of Hot*

*Springs* v. *Colbert,* 209 Ark. 1070, 193 S. W. 2d 806; *Elm Springs Canning Company* v. *Sullins,* 207 Ark. 257, 180 S. W. 2d 113; *Williams Manufacturing Company* v. *Walker,* 206 Ark. 392, 175 S. W. 2d 380; *Peerless Coal Company* v. *Jones,* 219 Ark. 181, 240 S. W. 2d 647.

If this law has any meaning or force or effect, it should be applied here."

In *Tri-State Const.* v. *Worthen,* 224 Ark. 418, 274 S. W. 2d 352, the worker suffered a cerebral hemorrhage and collapsed on the job. The Workmen's Compensation Commission denied compensation and we held the Commission was in error, saying:

"The Commission found that Worthen's collapse was not the result of his work, but was the result of a pre-existing diseased condition. * * *

In a long line of cases we have held that when the worker collapses because of excessive work load or unusual strain, he is entitled to compensation, even though he had a pre-existing weakness which contributed to his collapse. One such case is *Triebsch* v. *Athletic Mining & Smelting Co.,* 218 Ark. 379, 237 S. W. 2d 26; and we quote from that *in extenso:*

'But on the accidental injury phase of the case, the uncontradicted evidence shows that the claimant suffered an *accidental injury* within the purview of our cases such as: *Herron Lumber Co.* v. *Neal,* 205 Ark. 1093, 172 S. W. 2d 252; *McGregor* v. *Arrington,* 206 Ark. 921, 175 S. W. 2d 210; *Harding Glass Co.* v. *Albertson,* 208 Ark. 866, 187 S. W. 2d 961; *Sturgis Bros.* v. *Mays,* 208 Ark. 1017, 188 S. W. 2d 629; *Murch-Jarvis Co.* v. *Townsend,* 209 Ark. 956, 193 S. W. 2d 310; and *Batesville White Lime Co.* v. *Bell,* 212 Ark. 23, 205 S. W. 2d 31.

In *Herron Lumber Co.* v. *Neal, supra,* the worker

had a gastric ulcer which ruptured while he was performing a task that required extra energy. We held that the worker suffered an *accidental injury* within the purview of the Workmen's Compensation Law, and quoted from 71 C. J. 607:

"Injury from strain or over-exertion due to a physical condition pre-disposing the employee to injury is an injury within the terms of the various workmen's compensation acts * * *"

In *McGregor* v. *Arrington, supra,* the worker was a carpenter. He had an impaired heart, and, in trying to move a plank, he over-exerted himself and suffered a collapse and died. We allowed compensation, saying that the decedent's death resulted from an accidental injury arising out of and in the course of his employment.

In *Harding Glass Co.* v. *Albertson, supra,* the worker also had an impaired heart; and while at work suffered a heat prostration and died. In allowing compensation, we quoted from Schneider on Workmen's Compensation Text, Vol. 4, 1328, p. 543:

"It may be stated generally that if the conditions of the employment, whether due to over-exertion, excessive heat, excessive inhalation of dust and fumes, shock, excitement, nervous strain or trauma, tend to increase an employee's blood pressure sufficiently to cause a cerebral hemorrhage, such result constitutes a compensable accident, within the intent of most compensation acts, though the employee may have been suffering from a pre-existing diseased condition which pre-disposed him to such result, or where such result would have occurred in time due to the natural progress of such pre-existing condition. . . The majority of the American Courts follow the English rule as set out in the case of *Clover, Clayton & Co.* v. *Hughes,* A. C. 242: 'An accident arises out of the employment when the re-

quired exertion producing the accident is too great for the man undertaking the work, whatever the degree of exertion or condition of health.'

In *Sturgis Bros.* v. *Mays, supra,* the worker, in the course of his employment, overtaxed his previously weakened heart and died. In allowing compensation, we quoted a leading case:

"Nor is it a defense that the workman had some pre-disposing physical weakness but for which he would not have broken down. If the employment was the cause of the collapse, in the sense that but for the work he was doing it would not have occurred when it did, the injury arises out of the employment.'

In *Murch-Jarvis Co.* v. *Townsend, supra,* the worker became disabled from inhaling fumes and dust in the course of his work in a smelter room. We held such disability to be "an accidental injury within the meaning of our Workmen's Compensation Law," saying:

"There are numerous cases from other jurisdictions holding that a disease, or an aggravation thereof, resulting from inhalation of dust particles or fumes may constitute an accident, or injury, within the meaning of the particular act involved."

In *Batesville White Lime Co.* v. *Bell, supra,* the inhalation of dust particles caused heart trouble, we held such to be an accidental injury, saying:

"Now there is nothing in the proof of this case to justify a conclusion that the injury to appellee's heart by breathing the excessive amount of dust was one which appellee might have reasonably expected or anticipated. Certainly it was accidental as far as he was concerned; and there is much authority for a holding that an injury, not necessarily the

result of one impact alone, but caused by a continuation of irritation upon some part of the body by foreign substances may properly be said to be accidental.''

Then, in *Triebsch* v. *Athletic Mining & Smelting Co., supra,* we applied the rule of the quoted cases to the facts there existing, and announced our conclusion in this language:

''Therefore, to summarize: we have in the case at bar undisputed facts which are similar in essential respects to those which existed in the six cases hereinbefore discussed, in each of which compensation was awarded. These facts are: *a pre-existing ailment, an increased and overtaxing effort to accomplish the work load under the conditions existing, and a collapsed worker resulting therefrom.* These make a case of accidental injury within the purview of the Workmen's Compensation Law.'' (Italics our own.)' ''

After reviewing all the evidence in the case, we concluded in *Tri-State* v. *Worthen, supra:*

''* * * the Commision apparently lost sight of the uncontradicted evidence which shows: (1) a pre-existing ailment; (2) an increased and overtaxing effort to accomplish the work load under the conditions existing; and (3) a collapsed worker resulting therefrom. As we said in *Triebsch* v. *Athletic Mining Co.,* 218 Ark. 379, 237 S. W. 2d 26: 'These make a case of accidental injury within the purview of the Workmen's Compensation Law.' ''

In the case at bar, a man with a bad heart[2] was

[2]For the benefit of those interested in further study of heart cases, we call attention to the following: "The Heart Attack Case in Workmen's Compensation," by Hon. Henry Woods in 16 Ark. Law Review 214; "The Relationship of Effort or Stress to Coronary Heart Disease," by Hon. William B. Putman, in 17 Ark. Law Review 39; and comments in 24 NACCA Law Journal, p. 134; 29 NACCA Law Journal, p. 223; and 30 NACCA Law Journal, p. 244.

trying to support his family. He went under a house, laid on his back, held up a 2 x 6 with one hand and nailed it with the other, thus having excess strain. He died and his family was denied compensation because it was said that he would have died anyway. In *Bettendorf* v. *Kelly*, 229 Ark. 672, 317 S. W. 2d 708, the argument was made that the worker would have died anyway and we said of that argument:

"We cannot follow appellant in the conclusion urged. Every time a mortal is born everyone knows that some time the mortal will die, so the death of a mortal is never unforeseen or unexpected in the light of human existence. But just when the death will occur and under what circumstances, is certainly unforeseeable and unpredictable. So it was with the heart attack of Mr. Kelly in the case at bar: no one could tell when it would occur. He was engaged in a line of work, he was exerting himself by the driving of nails into the pallets, he collapsed: his death was, therefore, accidental and within the scope of his employment."

To conclude: the Workmen's Compensation Law was adopted to give compensation to workers, not to allow insurance carriers to make fine distinctions to avoid liability. In this case the Commission did not give the liberal interpretation to the law which our cases require. The judgment is reversed and the cause remanded to direct the Commission to allow compensation to the widow and dependents.

Reversed and remanded.

COBB, J., disqualified and not participating.

HARRIS, C. J., and SMITH, J., dissent.

CARLETON HARRIS, Chief Justice, dissenting. Our rule to the effect that we will affirm the holding of the Workmen's Compensation Commission, if there is any

substantial evidence to support its ruling, is so well established as to require no citation of authority.

I consider that the testimony of Dr. Alfred Kahn, who testified that, in his opinion, Mr. Dougan's work did not contribute to his death, was substantial evidence, and entirely sufficient to support the findings of the commission.

I therefore respectfully dissent.

SMITH, J., joins in dissent.