## Willie McCARTY *v.* Everett REID and SOUTHERN FARM BUREAU INSURANCE CO.

CA 79-233                                    595 S.W. 2d 702

Court of Appeals of Arkansas
Opinion delivered March 5, 1980
Released for publication March 26, 1980

*Rogers & Madsen,* by: *Carl J. Madsen,* for appellant.

*Laser, Sharp, Haley, Young & Huckabay, P.A.,* for appellees.

MARIAN F. PENIX, Judge. The claimant was an employee of Everett Reid. He worked as a painter. On March 11, 1976, he was varnishing pantry shelves. In the kitchen, adjacent to the pantry, workers were gluing formica tops to counters. The claimant became choked up from the glue fumes. He testified the noxious odor made it difficult to breathe, caused

his eyes to water and that he had a feeling in his stomach or chest of indigestion or heartburn. He left work, was taken from his home to the hospital where it was determined he had had a heart attack. The Administrative Law Judge ruled claimant was totally disabled and that his disability arose out of and in the course of his employment. The full Commission reversed and found the claimant had failed to prove by a preponderance of the evidence his heart attack was causally related to his employment.

There is no dispute that claimant had a pre-existing condition of arteriosclerosis. The question facing the Commission was whether the incident involving the glue fumes was the precipitating factor for the heart attack.

There was conflicting medical testimony. Dr. Gerald Guyer, a family practitioner, testified the claimant told him he had an onset of chest pain at approximately 9:00 p.m. He further reviewed his records which indicated the claimant-patient "returns today with an increase in intensity." In Dr. Guyer's report of September 6, 1977 he wrote:

> It is possible that the final event could have occurred while he was at home, had he not gone to work that day. As we know, he was not at home, but at work, and exposed to conditions which may have contributed to excessive stress on his heart. For these reasons, I feel that in this case, the patient's illness arose out of and in the course of his employment.

A further examination of Dr. Guyer's testimony reveals the hospital records make no mention of the fact the claimant's hospitalization and subsequent treatment for his heart condition were in any way related to the glue inhalation. Dr. Guyer was asked:

> Q. What are the odds on taking a man that has this primary disease — what are the odds of that condition — that primary disease being aggravated to the extent that you saw him on March 11, by being in a room and smelling some glue fumes.

A. I think it's difficult to say. I can't say I don't know whether Willie McCarty's heart attack was precipitated by the fumes. I don't know that they were not. I think the combination of the fumes, the temperature, etc. going up and down the ladder made it possible that this could have caused enough stress to exceed the abilities of the heart. (Other testimony was the claimant did not climb a ladder the day of the attack)

The contradictory medical evidence was the testimony of Dr. B. J. Jenkins, a cardiologist.

. . . I have never seen, I have never read, I have never heard of and to my knowledge it is not recorded an incidence of myocardial infarction having been either caused or contributed to or precipitated by the presence of glue odor . . . Mr. McCarty had an infarct or had a heart attack. Statistically he was as likely to have it at work as he was at home and as a matter of fact he statistically would have been just as apt to have had it had he been in the hospital at the time it occurred . . . By pure coincidence it occurred at that time and in my judgment had he been sitting on the front door of the hospital that morning at that particular time he would have had that myocardial infarction. As a matter of fact, one of the conflicting bits of testimony, as I recall, in reading most records was in regard to whether or not he had preceding chest pain. There was a conflict in that Dr. Guyer's initial hospital note said that he had chest pain the previous evening at home, and he may or may not have. It's, he very likely, could have had his heart attack the previous evening at home, you know.

Additional medical evidence was from Dr. J. C. Campbell, a specialist in pulmonary medicine. He responded to the question "Does the presence of fumes from a glue identical with or substantially identical with that described in the enclosed label (Dura Beauty, Contact Bond Cement) in an unventilated room reduce the supply of oxygen therein?"

In my judgment the oxygen supply in the room would not be reduced to any significant degree unless the

fumes were ignited . . . Minor dilution of the oxygen supply in an unventilated room is possible, this would not be of medical significance in comparison to the potential direct toxic effect of the fumes themselves as well as the risk of explosion . . .

The claimant has cited several cases which represent instances when the Workers' Compensation Commission has allowed recovery for a heart attack. In each instance there was substantial medical evidence to support the claimant's contention that the attack arose out of and was in the course of his employment.

The claimant relies on *Dougan* v. *Booker,* 241 Ark. 224, 407 S.W. 2d 369 (1966). We find the *Dougan* case to be distinguishable from the one at hand. Evidence showed Mr. Dougan to have been engaged in a cramped position, doing strenuous work on the job. In *Ottenheimer Brothers Manufacturing Co.* v. *Casey,* 243 Ark. 209, 419 S.W. 2d 784 (1967) Chief Justice Harris said, in referring to *Dougan,* supra:

> . . . But there are some distinctions in that case. There, a worker with a bad heart put forth unusual exertion in his work, collapsed on the job and died . . . As stated at the outset, we are only concerned with whether there was substantial evidence to support the finding of the Commission. It is not within our province irrespective of any sympathy that we might have . . . to decide questions of fact.

In the case at hand the Workers' Compensation Commission unanimously decided the heart attack suffered by claimant, did not arise out of and in the course of his employment. After a careful review of the record, and with an eye to the liberal construction to be afforded claimant we cannot find the Commission reached an erroneous conclusion. We find there to be substantial evidence. This is the test we must apply to the Commission's findings. *Purdy* v. *Livingston,* 262 Ark. 575, 559 S.W. 2d 24 (1977); *Barksdale Lumber Co.* v. *McAnally,* 262 Ark. 375, 557 S.W. 2d 868 (1977).

Affirmed.